[No. E017944. Fourth Dist., Div. Two. Nov. 18, 1997.]

CITY OF SAN BERNARDINO HOTEL/MOTEL ASSOCIATION, Plaintiff and Appellant, v.
CITY OF SAN BERNARDINO, Defendant and Respondent.

**COUNSEL**

Frank A. Weiser for Plaintiff and Appellant.

James F. Penman, City Attorney, and Robert L. Simmons, Assistant City Attorney, for Defendant and Respondent.

## OPINION

**HOLLENHORST, Acting P. J.**—The City of San Bernardino Hotel/Motel Association (herein Association) brought this action to challenge the validity of a transient occupancy tax adopted by the City of San Bernardino. The trial court found the tax ordinance constitutional and rendered judgment in favor of the defendant city.

The Association appeals, contending that the ordinance is unconstitutional.

### THE TRANSIENT OCCUPANCY TAX

The ordinance imposes a 10 percent tax on transients for the privilege of occupancy in a hotel in San Bernardino. The tax is normally paid to the operator of the hotel at the time the rent is paid. The hotel operator is required to collect the tax at the time rent is paid, and the operator must remit the tax to the city monthly. The operator is subject to penalties for delinquent payment, and violations of any provision of the ordinance are a criminal misdemeanor.

### POWER TO IMPOSE THE TAX

■ The Association first contends that the ordinance is preempted by state law. Specifically, the Association contends: (1) Revenue and Taxation Code section 7280 defines "transient occupant"; (2) the definition of "transient occupant" is a matter of statewide concern as part of a statewide statutory scheme; and (3) the Legislature has therefore occupied the field and preempted differing local definitions. The city contends that it is not limited by the definition in Revenue and Taxation Code section 7280.

Revenue and Taxation Code section 7280 provides, in relevant part: "The legislative body of any city or county may levy a tax on the privilege of occupying a room or rooms, or other living space, in a hotel, inn, tourist home or house, motel, or other lodging unless the occupancy is for any period of more than 30 days."

The San Bernardino City ordinance provides for a tax on transients and defines "transient" to be a person who is an occupant for less than 90 consecutive calendar days or who "occupies premises intended for transient occupancy on a temporary basis for more than ninety days without contracting for occupancy on a permanent basis."

The issue presented is whether Revenue and Taxation Code section 7280 preempts the transient occupancy tax ordinance. ■ "The general principles governing preemption analysis are these. [¶] Under article XI, section 7

of the California Constitution, '[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws.' [¶] 'If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.' [Citations.] [¶] 'A conflict exists if the local legislation " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' [Citations.] [¶] Local legislation is 'duplicative' of general law when it is coextensive therewith. [Citation.] [¶] Similarly, local legislation is 'contradictory' to general law when it is inimical thereto. [Citation.] [¶] Finally, local legislation enters an area that is 'fully occupied' by general law when the Legislature has expressly manifested its intent to 'fully occupy' the area [citation], or when it has impliedly done so in light of one of the following indicia of intent: '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the' locality [citations]." (*Sherwin-Williams Co.* v. *City of Los Angeles* (1993) 4 Cal.4th 893, 897-898 [16 Cal.Rptr.2d 215, 844 P.2d 534], fn. omitted.) The omitted footnote makes it clear that a charter city is exempt, with respect to its municipal affairs, from the "conflict with general laws" restriction of California Constitution, article XI, section 7. (4 Cal.4th at p. 897, fn. 1.)

 San Bernardino is a charter city, and we agree with its contention that Revenue and Taxation Code section 7280 does not preempt the tax levied here. California Constitution, article XI, section 5, subdivision (a), provides: "It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith."

The levy of taxes for city purposes is generally a municipal affair. (*City of Glendale* v. *Trondsen* (1957) 48 Cal.2d 93, 99 [308 P.2d 1]; *City of Grass Valley* v. *Walkinshaw* (1949) 34 Cal.2d 595, 599 [212 P.2d 894].) "The taxation power is vital and is granted to charter cities by the Constitution.

[Citation.] Their ability to impose revenue taxes can be curtailed only by the charter itself or when 'in direct and immediate conflict with a state statute or statutory scheme.' [Citation.] That the state has preempted a field of state-wide concern for purposes of regulation does not itself prevent local taxation of the persons or activities regulated. [Citations.]" (*The Pines* v. *City of Santa Monica* (1981) 29 Cal.3d 656, 660 [175 Cal.Rptr. 336, 630 P.2d 521].)

In the more recent case of *Fisher* v. *County of Alameda* (1993) 20 Cal.App.4th 120 [24 Cal.Rptr.2d 384], the court considered exceptions to the general rule when it considered an initiative measure which prohibited local government from enacting a real property transfer tax. The City of Berkeley, a charter city, contended that the home rule powers of article XI, section 5, of the California Constitution allowed it to adopt a real property transfer tax. Citing *California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1991) 54 Cal.3d 1 [283 Cal.Rptr. 569, 812 P.2d 916], the court discussed situations in which taxation matters of local concern could impinge on matters of state-wide concern. The *Fisher* court said "The [*CalFed*] court adopted a 'decisional procedure intended to bring a measure of certainty to the process' of adjudicating home rule issues. [Citation.] Initially, a court 'must satisfy itself that the case presents an actual conflict between' a state statute and a charter city measure. [Citation.] In cases presenting a true conflict, the court should then pursue 'a focus on extramunicipal concerns as the starting point for analysis.' [Citation.]" (*Fisher* v. *County of Alameda, supra*, 20 Cal.App.4th 120, 126.) After applying this analysis, the court affirmed the real estate transfer tax.

Applying this method of analysis here, we find that there is no actual conflict between Revenue and Taxation Code section 7280 and the city's transient occupancy tax. Particularly persuasive is *Atlas Hotels, Inc.* v. *Acker* (1964) 230 Cal.App.2d 658 [41 Cal.Rptr. 231]. In that case, the question was whether a transient occupancy tax enacted by the City of San Diego, a charter city, was subject to referendum requirements. The argument was made that Government Code section 51030, the predecessor to Revenue and Taxation Code section 7280, preempted the field of transient room occupancy taxes by the state and, as a result, the local ordinance merely implemented the authorizing statute and was therefore not subject to the referendum requirement. (230 Cal.App.2d at pp. 664-665.) The court responded: "We do not find that Government Code section 51030 in anywise regulates or purports to control the transient room business. The statute simply enables counties and cities which derive their powers from the general law, to impose a transient room tax. It does not purport to protect the health or safety of transient renters or in any way control or preempt the field to the

exclusion of local government entities." (*Id.,* at p. 665.) Under this interpretation, Revenue and Taxation Code section 7280 authorizes general law cities to impose a transient occupancy tax. It does not conflict with the power of charter cities to enact such taxes, and the definition of "transient" in that section does not preempt the field or prevent the City of San Bernardino from adopting another definition of "transient." As stated in the leading case of *Gowens* v. *City of Bakersfield* (1961) 193 Cal.App.2d 79 [13 Cal.Rptr. 820], "It should be here noted that in California a charter city such as Bakersfield has, in some respects, coequal powers of taxation with the state, and is limited only by its charter and the state and the federal constitutions in the exercise of this power. . . . [¶] Although we find no direct authority in California on the subject, we conclude that the [transient occupancy] tax here imposed is on the privilege of occupying a room under the conditions described and is a local event which falls within the city's powers of taxation." (*Id.,* at p. 83.)

■ We also agree with the city that the other statutes cited by the Association do not compel the conclusion that the Legislature intended to preempt local transient occupancy taxes. The Association cites Civil Code sections 1940 and 1940.1 subdivision (a), Code of Civil Procedure section 1161, Penal Code section 602, subdivision (r), and Health and Safety Code section 50519. Civil Code sections 1940 and 1940.1 subdivision (a) are part of a chapter entitled "Hiring of Real Property." The chapter provides certain protections to tenants but excludes transient occupancy "when the transient occupancy is or would be subject to tax under Section 7280 of the Revenue and Taxation Code." (Civ. Code, § 1940, subd. (b)(1).) Civil Code section 1940.1 prevents residential hotels from requiring persons to move, or check out and reregister, to avoid the definition of "transient occupancy" in Civil Code section 1940. Health and Safety Code section 50519 is referenced in Civil Code section 1940.1 for its definition of a residential hotel. Otherwise, Health and Safety Code section 50519 is part of a chapter dealing with residential hotel rehabilitation.

We find no conflict between these sections and the San Bernardino ordinance. Civil Code chapter 2, the chapter which includes Civil Code sections 1940 and 1940.1, provides protections to tenants, except tenants subject to tax under Revenue and Taxation Code section 7280. Here, the tenants are not subject to tax under Revenue and Taxation Code section 7280, and, accordingly, the exemption provided by Civil Code section 1940, subdivision (b)(1) is inapplicable. We discern no conflict between the provisions of these sections and the San Bernardino ordinance. Nor do we see any intent to occupy the field of residential real property tenancies. If construed otherwise, cities could not regulate such tenancies at all.

Code of Civil Procedure section 1161 is the unlawful detainer section. Its definition of tenant excludes persons described in Civil Code section 1940, subdivision (b). (Code Civ. Proc., § 1161, subd. 5.) Penal Code section 602 is the criminal counterpart of the unlawful detainer section. It defines trespass to make it a misdemeanor violation of that section for a person to fail or refuse to leave a hotel if the occupancy is exempt pursuant to the definition in Civil Code section 1940, subdivision (b).

We find these definitional sections, and other sections cited by the Association, to be unhelpful. We agree with the city that it was not required to follow the definition in Revenue and Taxation Code section 7280 in defining "transient occupancy" for purposes of its transient occupancy tax. The city could, and did, define "transient" differently from the definition in Revenue and Taxation Code section 7280. Nor do the cited sections indicate that the Legislature intended to preempt local ordinances such as the transient occupancy tax adopted by the City of San Bernardino.

We therefore agree with the trial court that the San Bernardino City ordinance is not preempted by Revenue and Taxation Code section 7280 or the other statutes cited.

### DUE PROCESS ISSUES

The Association next contends that the San Bernardino City ordinance violates due process of law because (1) the definitional sections of the ordinance are vague, circular, and contradictory; (2) the ordinance is vague in its specification of recordkeeping requirements; (3) a subpoena or administrative warrant is not required for the production of records; and (4) the ordinance violates a protected liberty interest and violates Government Code section 65008, subdivision (c), which prohibits discrimination in low income housing. We only find it necessary to consider the first of these contentions.

*The definitional sections.*

The Association makes a facial attack on the validity of the ordinance. "A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual." (*Tobe* v. *City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) A vagueness challenge will be rejected if the challenged ordinance "(1) gives fair notice of the practice to be avoided, and (2) provides reasonably adequate standards to guide enforcement." (*Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 702 [209 Cal.Rptr. 682, 693 P.2d 261].)

The Association first cites *Lanzetta* v. *New Jersey* (1939) 306 U.S. 451 [59 S.Ct. 618, 83 L.Ed. 888], in which a criminal statute was found to be so vague as to violate the due process clause. The Supreme Court said: "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." (*Id.*, at p. 453 [59 S.Ct. at p. 619], fn. omitted.)

The Association also cites *Connally* v. *General Construction Co.* (1926) 269 U.S. 385 [46 S.Ct. 126, 70 L.Ed. 322]. In that case, the Supreme Court also declared a statute unconstitutional on vagueness grounds. The statute prescribed an eight-hour day for state employees and provided that state employees be paid a prevailing wage. Criminal sanctions were imposed for violation of the statute. The court said: "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." (*Id.*, at p. 391 [46 S.Ct. at p. 127]; see also *People* v. *Barksdale* (1972) 8 Cal.3d 320 [105 Cal.Rptr. 1, 503 P.2d 257].)

The Association therefore contends that the definitional sections of the ordinance are too vague to be the basis for a criminal statute. It points to the definitions of "hotel," "occupancy," "transient" and "rent."

The ordinance defines a "hotel" as "any structure, or any portion of any structure which is occupied or intended or designed for occupancy by transients for lodging or sleeping purposes, and includes any hotel, inn, tourist home or house, motel, studio hotel, bachelor hotel, lodginghouse, roominghouse, dormitory, public or private club, mobile home or house trailer located outside a mobile home park for occupancy on a transient basis for a period of thirty days or less unless the occupant is an employee of the owner or operator of the mobile home or trailer, or other similar structure or portion thereof."

The ordinance defines "occupancy" as "the use or possession, or the right to the use or possession of any room or rooms or portion thereof, in any hotel for dwelling, lodging or sleeping purposes."

The ordinance defines "rent" as "the consideration charged, whether or not received for the occupancy of space in a hotel valued in money, whether

to be received in money, goods, labor or otherwise, including all receipts, cash, credits and property and services of any kind or nature, without any deduction therefrom whatsoever."

Finally, the ordinance defines "transient" as "any person who exercises occupancy or is entitled to occupancy by reason of concession, permit, right of access, license or other agreement, for a period of ninety consecutive calendar days or less, counting portions of calendar days as full days, and to any person who so occupies premises intended for transient occupancy on a temporary basis for more than ninety days without contracting for occupancy on a permanent basis. Any such person so occupying space in a hotel or motel shall be deemed to be a transient without regard to the ninety-days period, unless there is an agreement in writing between the operator and the occupant providing for a permanent occupancy. In determining whether a person is a transient, uninterrupted periods of time extending both prior and subsequent to the effective date of the ordinance codified in this chapter may be considered. Each occupant of a hotel or motel as defined in the City of San Bernardino Development code shall be deemed to be a transient, for purposes of this chapter, unless the hotel or motel is authorized to have permanent residents. Each occupant of any such hotel or motel shall be deemed a transient, for purposes of this chapter, regardless of the period of continuous occupancy until an agreement is entered into between the operator and the occupant providing for permanent tenancy."

The Association finds vagueness in using a 30-day occupancy rule to define "hotel" while using a 90-day occupancy rule to define "transient." It also objects to the word "dwelling" in defining the term "occupancy," contending that it is contradictory to renting on a transient basis. The latter contention is based on *Britt* v. *City of Pomona* (1990) 223 Cal.App.3d 265, 269 [272 Cal.Rptr. 724].

In *Britt*, the court held that a transient occupancy tax imposed by the City of Pomona violated due process requirements because its terms were too vague to be understood and applied by persons of common intelligence. (*Britt* v. *City of Pomona, supra,* 223 Cal.App.3d 265, 278-280.) The court considered two versions of the tax and found them both vague. The 1987 version, although it appeared "to be directed at transients, in actuality includes persons living in 'hotels' who, like the plaintiffs, are not in fact transients. Second, the law appears to require the tax to be paid by all persons living in the 'hotels,' even those living there under a fee interest in the hotel . . . ." (*Id.,* at pp. 278-279.) The court also noted that the 1987 version included the word "dwelling" in its definitions of "hotel" and

"occupancy," even though the word "dwelling" generally is a building used for long-term residents. The court also found that the definitions of "transient" and "hotel" were circular. (*Ibid.*)

The 1988 version of the tax had the same problems. In addition, although it substituted the term "lodger" for "transient," the vagueness was not clarified because "lodger" includes both temporary and continuous living arrangements. (*Britt* v. *City of Pomona, supra,* 223 Cal.App.3d 265, 279.) The court also held the ordinance vague with regard to a distinction between lodgers living at a hotel on a long-term basis, but not a tenancy basis. Finally, the 1988 ordinance was vague because the term "transient lodging accommodations" was not defined in the ordinance. (*Id.,* at p. 280.) The court noted that the 1988 ordinance had deleted prior 60-day and 30-day limitations in the definitions of the term "transient," thus giving greater uncertainty to the meaning of the term "transient lodging accommodations." (*Id.,* at p. 280.)

The city argues that *Britt* is distinguishable because the ordinance here includes a 90-day requirement in the definition of "transient." While the first phrase of the definition of "transient" so provides, the second phrase imposes a contracting requirement. That is, it provides that "transient" also includes "any person who so occupies premises intended for transient occupancy on a temporary basis for more than ninety days without contracting for occupancy on a permanent basis." It goes on to provide that "Any such person so occupying space in a hotel or motel shall be deemed to be a transient without regard to the ninety-days period, unless there is an agreement in writing between the operator and the occupant providing for a permanent occupancy." The ordinance also states: " 'Permanent' in regard to tenancy and residents shall be deemed to apply to those tenancies and residents wherein tenancy is on the basis of an agreement in writing for occupancy on a month-to-month or week-to-week basis, or for any definite period of time."

The city thus argues that the 90-day requirement in the San Bernardino ordinance distinguishes it from the Pomona ordinance and "provides adequate notice to those being taxed and those collecting the tax and meets due process requirements of both the State and Federal constitutions." While we would agree if the 90-day requirement was the only definition of "transient" (cf. *Gowens* v. *City of Bakersfield, supra,* 193 Cal.App.2d 79, 83-84 [a 30-day test to distinguish between transients and residents is a reasonable classification for occupancy tax purposes]), the present definition would apply to persons occupying property for more than 90 days in some situations. In other words, the question is not whether the classification is reasonable, but rather whether the definition of "transient" is vague.

Returning to the specific objection raised by the Association, the Association finds vagueness because the definition of "hotel" uses a 30-day limit, while the definition of "transient" uses a 90-day limit. Thus, since the tax is imposed on transients for the privilege of occupancy in a hotel, it contends that the definitions are needlessly contradictory. Specifically, "hotel" is defined as a structure "occupied or intended or designed for occupancy by transients" which includes a "mobile home or house trailer located outside a mobile home park for occupancy on a transient basis for a period of 90 days or less." The definition of "transient" includes persons who occupy a hotel for dwelling, lodging or sleeping purposes for 90 days or less, although it also includes persons who stay in a hotel for more than 90 days without contracting for occupancy on a permanent basis. The definition of "permanent" is troublesome, as it includes any agreement in writing for occupancy for any definite period of time, but does not include the first 90 days of occupancy "in any motel, hotel or motor hotel which rents more than one-half of its rooms or dwelling units at a daily or weekly rate." Thus, although the defined term "hotel" is used, it appears that the definition is only intended to apply to certain motels, hotels, or undefined motor hotels.

As the Association points out, the definition of "occupancy" includes the right to use a hotel room for dwelling purposes. In *Britt*, the court held that the use of the term "dwelling" includes persons other than transients, and use of the term "dwelling" adds to the confusion. (*Britt* v. *City of Pomona, supra,* 223 Cal.App.3d 265, 279.) *Britt* also found the definitions of "hotel" and "transient" to be circular (*id.,* at p. 279), and the same problem is apparent here. "Hotel" is defined to include structures used or intended to be used by "transients," and "transient" is defined to be a person who exercises "occupancy," which is defined to be the use of a room in a "hotel."

Although the definition of "hotel" includes "hotels" and "motels" and several other types of lodging arrangements, the definition of "transient" refers to "hotels and motels," thus creating some doubt as to whether the drafter intended to refer to the broad definition of "hotel" or a narrower subclassification of "hotels and motels." The definition of "transient" also deems certain persons to be transients by reference to a third definition of hotel or motel, namely "a hotel or motel as defined in the City of San Bernardino Development code . . . unless the hotel or motel is authorized to have permanent residents."[1] The meaning of the latter term is particularly unclear.

---

[1] The city's development code defines "Hotel" to be "Guest rooms or suites occupied on a transient basis, with most rooms gaining access from an interior hallway." (San Bernardino City Development Code, § 19.02.050.) It defines "Motel" to be "Guest rooms or suites

The definition of "transient" is also vague in its lack of definition of the term "an agreement in writing between the operator and the occupant providing for a permanent occupancy." As noted above, the definition of "permanent" also requires "an agreement in writing for occupancy . . . for any definite period of time . . . ." The term "agreement in writing" is undefined. Is there an "agreement in writing" if the customer signs a hotel registration card, pays for the room, and receives a receipt? The definition of the term "permanent" also uses the term "motor hotel" and that term is undefined.

The trial court did not address any of these definitional problems, commenting only that "The Court discerns no Fifth Amendment issues in this case." Unlike the trial court, we find that the definitional problems in the statute render it vague and therefore unconstitutional under the Fifth Amendment. The problems are accentuated by the fact this is a penal statute. In our view, the definitions do not adequately distinguish between a person living from day-to-day or week-to-week in a motel and an apartment dweller on month-to-month tenancy.

According to plaintiff's counsel, the Pomona ordinance considered in *Britt*, and the ordinance here, were based on a model ordinance that was drafted after the *Gowens* case upheld the Bakersfield transient occupancy tax in 1961. The definitions used by the City of San Bernardino are very similar to those found to be vague in *Britt*, and we find that they suffer from many of the same infirmities. ■ " '[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' " (*People* v. *Barksdale, supra*, 8 Cal.3d 320, 327.) ■ The San Bernardino transient occupancy tax ordinance fails this test. Accordingly, we follow *Britt* and find that the San Bernardino transient occupancy ordinance is void for vagueness.

Although we need not address other issues, we note that the Association has raised serious questions about (1) the definition of "exemption" in the ordinance; (2) the fact that the ordinance provides that the operator of the housing, generally members of the Association, must keep records for three years, and the city clerk has the power to inspect the records at all reasonable

---

occupied on a transient basis, with most rooms gaining access from exterior walkway." (*Ibid.*) The code also defines "Transient basis" as "A continuous period of 2 weeks or less." (*Ibid.*)

Thus, if a hotel or motel rents rooms on more than a two-week basis, it is no longer included within the definition of a hotel or motel. As plaintiff pointed out at oral argument, this additional definition conflicts with the definition of transient occupancy as occupancy for 90 days or less.

times without a subpoena or administrative warrant (see *Pinney* v. *Phillips* (1991) 230 Cal.App.3d 1570 [281 Cal.Rptr. 904]); and (3) equal protection classification issues (see *Gowens* v. *City of Bakersfield, supra,* 193 Cal.App.2d 79, 83-84). Although we have some reservations about the validity of the current ordinance under each of these additional issues, we need not discuss those issues here.

Although the Association seeks a permanent injunction against the tax, we reject the request. The city is free to try again, with appropriate modifications to the definitional and other sections of the ordinance. (Compare *Gowens* v. *City of Bakersfield* (1960) 179 Cal.App.2d 282 [3 Cal.Rptr. 746] [Bakersfield transient occupancy tax invalid] with *Gowens* v. *City of Bakersfield, supra,* 193 Cal.App.2d 79 [revised Bakersfield transient occupancy tax upheld].)

DISPOSITION

The judgment is reversed. The Association is to recover its costs on appeal.

Richli, J., and Gaut, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 3, 1998.