[No. A104634. First Dist., Div. One. Nov. 8, 2004.]

CITY OF VACAVILLE, Plaintiff and Respondent, v.
RON PITAMBER et al., Defendants and Appellants.

740

COUNSEL

Frank A. Weiser for Defendants and Appellants.

Gerald L. Hobrecht, City Attorney, for Plaintiff and Respondent.

OPINION

**MARCHIANO, P. J.**—The City of Vacaville (the City) imposes a duty on hotel owners to collect and remit to the City a transient occupancy tax as authorized by Revenue and Taxation Code section 7280.[1] (Vacaville Mun. Code §§ 3.16.010–3.16.120 (VMC).) Ron Pitamber, operator of the Best Western Heritage Inn (Best Western), refused to comply with the City's audit request for records used to compute the tax. The superior court ordered compliance and Pitamber and Best Western appealed.[2] We agree with the reasoning and holding in *Patel v. City of Gilroy* (2002) 97 Cal.App.4th 483 [118 Cal.Rptr.2d 354] (*Gilroy*) and affirm.

### BACKGROUND

The City had conducted regular compliance reviews of Best Western in 1993 and 1997 without incident. In March of 2003, the City's auditor notified Best Western of its intent to conduct another periodic audit of the records of Best Western.

This time, Pitamber's counsel notified the City that under the authority of *City of San Bernardino Hotel/Motel Assn. v. City of San Bernardino* (1997)

---

[1] Revenue and Taxation Code section 7280, subdivision (a) provides: "The legislative body of any city or county may levy a tax on the privilege of occupying a room or rooms, or other living space, in a hotel, inn, tourist home or house, motel, or other lodging unless the occupancy is for any period of more than 30 days."

[2] References to Pitamber or Best Western include both appellants.

59 Cal.App.4th 237 [69 Cal.Rptr.2d 97] (*San Bernardino*), Best Western was not obligated to disclose its books and records to the City. On April 25, 2003, the City's finance manager notified Pitamber that the City intended to issue a subpoena for inspection of Best Western's records.

On April 29, 2003, the City Council authorized the mayor to issue a subpoena pursuant to Government Code sections 37104–37105, directing Best Western's custodian of records to appear before the City Council and produce the relevant books and records.[3] Best Western's counsel responded with a letter asserting legal challenges to the subpoena and the transient occupancy tax ordinance itself. When Best Western did not comply with the subpoena, the Mayor of Vacaville, pursuant to section 37106, notified the superior court of Best Western's failure to appear.

On June 20, 2003, the superior court issued an order directing Pitamber to show cause why he should not comply with the subpoena. Pitamber responded with a brief arguing that the ordinance was unconstitutional and that the subpoena was unauthorized. The City filed a response and Pitamber filed a supplementary response challenging the superior court's jurisdiction.[4]

Following a hearing, the court issued its decision ordering Best Western and Pitamber to comply with the subpoena. The court determined that the ordinance was not unconstitutionally vague, the subpoena was not overbroad, and the City Council had the authority to issue the subpoena, citing *Gilroy, supra*, 97 Cal.App.4th 483. Best Western and Pitamber appeal, contending that the subpoena and the ordinance are invalid.

## DISCUSSION

Pitamber contends that the ordinance is unconstitutionally vague on its face and as applied in this case. He also contends that the ordinance violates due process and that the City Council was not authorized to issue the subpoena. We find the Vacaville ordinance to be almost identical to the ordinance considered in *Gilroy, supra*, 97 Cal.App.4th 483 and will affirm the superior court's decision.

### Standard for Facial Challenges to Unconstitutional Statutes

The majority opinion in *United States v. Salerno* (1987) 481 U.S. 739, 745 [95 L.Ed.2d 697, 107 S.Ct. 2095] (*Salerno*) explained the standard for reviewing facial constitutional challenges to statutes as follows. "A facial

---

[3] Except where otherwise indicated, all statutory references are to the Government Code.

[4] Pitamber has not raised the issue of the trial court's jurisdiction on appeal.

challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the *challenger must establish that no set of circumstances exists under which the Act would be valid.* The fact that [a statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." (Italics added.)

Pitamber contends that *Salerno* is not applicable and that the plurality opinion in *Chicago v. Morales* (1999) 527 U.S. 41 [144 L.Ed.2d 67, 119 S.Ct. 1849] (*Morales*) provides the correct standard. *Morales* determined that a gang loitering ordinance that reached "a substantial amount of innocent conduct," was unconstitutional on its face without deciding if the ordinance was vague in every application. (*Id.* at p. 60.)

Pitamber's argument was rejected in *Hotel & Motel Ass'n of Oakland v. City of Oakland* (2003) 344 F.3d 959, where the court stated: "Until a majority of the Supreme Court directs otherwise, a party challenging the facial validity of an ordinance on vagueness grounds outside the domain of the First Amendment must demonstrate that 'the enactment is impermissibly vague in all of its applications.' " (*Id.* at p. 972.) Similarly, the California Supreme Court has repeatedly employed the *Salerno* standard. (See, e.g., *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1116 [60 Cal.Rptr.2d 277, 929 P.2d 596] ["a claim that a law is unconstitutionally vague can succeed *only* where the litigant demonstrates . . . that the law is vague as to her or 'impermissibly vague in *all of its applications* . . .' "]; accord, *East Bay Asian Local Development Corp. v. State of California* (2000) 24 Cal.4th 693, 709 [102 Cal.Rptr.2d 280, 13 P.3d 1122] [statute will not be deemed facially invalid unless unconstitutional in all of its applications].) *Salerno* provides the correct analysis of Pitamber's facial challenge to the ordinance.

*The Vacaville Ordinance Is Not Facially Unconstitutional*

*Scienter Is Not a Required Element*

Pitamber argues that the lack of a scienter requirement in the ordinance renders it unconstitutionally vague in that it fails to provide fair warning of what is prohibited and impermissibly delegates policy matters to law enforcement agencies.[5]

---

[5] VMC section 3.16.120A provides that "[a]ny person violating any of the provisions of [the transient occupancy tax ordinance] shall be guilty of a misdemeanor and shall be punishable therefore by a fine of not more than one thousand dollars [$1,000.00] or by imprisonment in the county jail for a period of not more than six [6] months or by both . . . ."

None of the cases Pitamber cites support his argument. Pitamber argues that *United States v. Bishop* (1973) 412 U.S. 346 [36 L.Ed.2d 941, 93 S.Ct. 2008] (*Bishop*), requires willfulness as an element of the federal tax laws. In fact, *Bishop* only concerned the meaning of "willfully" where it was contained in specific felony and misdemeanor tax evasion statutes. (*Id.* at p. 348.) *United States v. Ragen* (1942) 314 U.S. 513, 524 [86 L.Ed. 383, 62 S.Ct. 374], cited for the proposition that a statute without a scienter requirement is a "trap for those who act in good faith," was a prosecution for willfully attempting to evade federal income tax provisions. The court's actual quote was: "On no construction can the statutory provisions here involved become a trap for those who act in good faith." *Grayned v. City of Rockford* (1972) 408 U.S. 104, 107–109 [33 L.Ed.2d 222, 92 S.Ct. 2294], concerned an anti-noise ordinance that was not held to be vague, and an ordinance prohibiting picketing that violated the equal protection clause. The court stated generally that vague laws fail to give notice of what conduct is prohibited.

■ No rule requires scienter as a necessary element of every law imposing criminal penalties. "It is an established principle that every true crime (as distinguished from 'regulatory' or 'public welfare' offenses) ordinarily requires a general criminal intent or 'mens rea.'" (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Elements, § 1, p. 198.) Statutes imposing taxes are regulatory statutes. "'[I]n the collection of taxes, the importance to the public of their collection leads the [L]egislature to impose on the taxpayer the burden of finding out the facts upon which his liability to pay depends, and meeting it at the peril of punishment.'" (*People v. Allen* (1993) 20 Cal.App.4th 846, 855 [25 Cal.Rptr.2d 26] [quoting from *United States v. Balint* (1922) 258 U.S. 250, 252 [66 L.Ed. 604, 42 S.Ct. 301].) "Where an affirmative act is involved, imposition of liability without proof of guilty intent or knowledge is constitutionally proper." (1 Witkin & Epstein, Cal. Criminal Law, *supra*, Elements, § 19, p. 224.)

### *The Definitions Are Sufficiently Clear*

Pitamber argues that the VMC's "definitional structure is patently circular." He refers to the flaws in the ordinance in *San Bernardino, supra*, 59 Cal.App.4th 237. The ordinance in this case does not suffer from the same problems. He argues that "hotel" is defined as a structure that furnishes lodging to a transient, that "transient" is defined as someone who obtains occupancy in a hotel and "occupancy" is defined as obtaining possession for dwelling or lodging purposes.

The Vacaville ordinance contains the following definitions. The definition of "hotel" is: "any structure or any portion of any structure which is occupied or intended or designated for occupancy by transients for dwelling, lodging or

sleeping purposes, including any hotel, inn, tourist home or house, motel, studio hotel, bachelor hotel, lodginghouse, roominghouse, apartment house, dormitory, public or private club, mobile home or house trailer at a fixed location or other similar structure or portion thereof." (VMC § 3.16.010A.)

" 'Transient' means any person who exercises occupancy or is entitled to occupancy by reason of concession, permit, right of access, license or other agreement for a period of thirty [30] consecutive calendar days or less . . . . Any such person so occupying space in a hotel shall be deemed to be a transient until the period of thirty days [30] has expired unless there is an agreement in writing between the operator and the occupant providing for a longer period of occupancy." (VMC § 3.16.010G.)

" 'Occupancy' means the use or possession or the right to the use or possession of any room or rooms or portion thereof in any hotel for dwelling, lodging or sleeping purposes." (VMC § 3.16.010B.)

The problem in *San Bernardino, supra*, 59 Cal.App.4th 237 was that the definitional sections of the ordinance were so confusing that they failed to give adequate notice of what conduct was required. For example, the ordinance defined "hotel" as a structure designed for occupancy on a transient basis for 30 days or less, but also defined "transient" as a person exercising occupancy for 90 days or less. The court determined that the ordinance in that case was unclear for a number of reasons, including the definitional conflict. (*Id.* at pp. 249–250.) The Vacaville ordinance does not use the conflicting definitions at issue in the *San Bernardino* case.

█ The Vacaville ordinance is almost identical to the ordinance reviewed in *Gilroy, supra*, 97 Cal.App.4th 483, 487. Pitamber's argument in this case is identical to the argument rejected by the *Gilroy* court. (*Id.* at pp. 487–488.) As that court noted, a party challenging an ordinance for vagueness must demonstrate that the ordinance is vague in " 'all of its applications,' " not just in some hypothetical possibility not applicable to the appellant. (*Id.* at p. 488.) Unlike the ordinance in *San Bernardino, supra*, 59 Cal.App.4th 237, this ordinance, like the one in *Gilroy*, clearly states that a guest is a transient until the first 30 days have passed if he or she has no written agreement. The definitions in the Vacaville ordinance are not vague.

*The Exemption Section Is Not Vague*

█ Pitamber argues that VMC section 3.16.021, setting out exemptions from the tax is unclear as to who is exempt from the tax, citing a comment in the *Gilroy* case to the effect that the similarly worded exemption provision in that case "hardly a model of clarity in exempting whoever is 'beyond the

power of the city to impose the tax.'" (*Gilroy, supra,* 97 Cal.App.4th at p. 491.) Like the *Gilroy* ordinance, the Vacaville provision also states that no tax shall be imposed upon "[a]ny person as to whom, or any occupancy as to which, it is beyond the power of the city to impose the tax."[6] However, we agree with the *Gilroy* court that some imprecision in an ordinance does not offend due process where the language "sufficiently warns of the proscribed conduct when measured by common understanding and experience . . . ." (*Gilroy,* at p. 491.) There was no confusion based on this provision in this case, and the wording of the provision does not make it "impossible for a hotel operator to comply with his or her duty to collect the transient occupancy tax or . . . [promote] arbitrary enforcement of the law." (*Ibid.*)

### The Subpoena Was Not Overbroad

Pitamber notes that the ordinance specifies a limited category of records that must be maintained, but argues that the legislative subpoena issued to him was "considerably broader."[7] The ordinance states that the records to be kept are not limited to those listed, but include "all records as may be necessary to determine the amount of such tax . . . ." (VMC § 3.16.090.) Pitamber identifies only two items in the subpoena that were not listed specifically in the ordinance: the number of complimentary rooms issued; and "[r]oom records supporting the allocation of charges among the various revenue sources (room, meals, etc.) for package promotions."

*De La Cruz v. Quackenbush* (2000) 80 Cal.App.4th 775 [96 Cal.Rptr.2d 92] and *New York v. Burger* (1987) 482 U.S. 691 [96 L.Ed.2d 601, 107 S.Ct. 2636], cited by Pitamber as support for his claim that the subpoena is not a constitutionally adequate substitute for a warrant are not applicable here. Both cases involved the appropriate criteria for inspections by administrative agencies that were carried out without a warrant or subpoena.

---

[6] The ordinance also exempts "[a]ny officer or employee of the federal government or a foreign government who is exempt by reason of express provision of federal law or international treaty." The ordinance also sets out the procedure for claiming an exemption. (VMC § 3.16.021.)

[7] VMC section 3.16.090 provides that every operator liable for collection of the tax is required to keep records for not less than three years, as follows: "all records as may be necessary to determine the amount of such tax as [the operator] may have been liable for the collection of and payment to the city, which records the tax administrator shall have the right to inspect at all reasonable times. The records maintained by the operator under this section shall include, but are not limited to, the following: [¶] (a) A written report that includes daily records of all of the following: [¶] (i) name of person occupying the room; (ii) number or other identifier of the room occupied; (iii) room rate; (iv) amount charged, if any, for the occupancy; (v) amount of transient occupancy tax collected; and (vi) method of payment. [¶] (b) A written record of each occupancy charge for which an exemption is claimed, including the name of the person occupying the room, dates of occupancy, reason(s) for the exemption, and the exemption claim form . . . ."

The Vacaville ordinance gives an operator notice that he or she must retain records relating to payment of the tax including name of the guest, rate charged, tax collected and other relevant information. (VMC § 3.16.090.) Furthermore, the ordinance contains a formula for a reduced tax in cases where occupancy is provided free of charge, for a reduced rate, or in exchange for promotional or marketing purposes. (VMC § 3.16.020.) The subpoena was not overly broad and did not violate the due process clause by requiring records that would have supported a reduced tax.

### Holding the Operator Responsible for Collecting Tax Is Not Unconstitutional

Pitamber contends that because the ordinance clearly states that the transient occupant is responsible for paying the tax and the operator is only responsible for collecting it, the due process clause prohibits the City from collecting unpaid tax from the operator. He cites *Heiner v. Donnan* (1932) 285 U.S. 312, 326–327 [76 L.Ed. 772, 52 S.Ct. 358] for the general proposition that a taxing statute may be so arbitrary as to offend the principles of due process. The *Heiner* court was discussing *Hoeper v. Tax Commission* (1931) 284 U.S. 206 [76 L.Ed. 248, 52 S.Ct. 120], where a Wisconsin statute added a wife's income to that of the husband when computing the husband's income tax. The high court determined that since the wife's income was her separate property, the state had no power to measure the husband's tax in part by the wife's income.

This case is not similar, as no one's tax liability is added to the computation of Pitamber's taxes. He is merely designated as the collector of taxes, and is responsible for remitting such collected taxes to the City. Making that designation does not offend the due process clause.

### The Subpoena Is Authorized by Section 37104

Pitamber argues that a legislative subpoena may not be issued unless there is a legislative proceeding pending before the City Council. He argues that the tax audit in this case was merely an administrative matter that was not pending before the City Council. Section 37104 provides: "The legislative body may issue subpoenas requiring attendance of witnesses or production of books or other documents for evidence or testimony in any action or proceeding pending before it." The statute is not limited to any specific type of proceeding.[8]

---

[8] The subpoena power has been considered a necessary adjunct of the powers reposed in the Legislature, "from the earliest times in the history of American legislation, both federal and state, and from even earlier epochs in the development of British jurisprudence." (*In re Battelle* (1929) 207 Cal. 227, 241 [277 P. 725] [explaining that the auxiliary power reposed in

 Our Supreme Court explained the breadth of a legislative investigation of matters within the scope of the agency's regulatory powers in *Connecticut Indemnity Co. v. Superior Court* (2000) 23 Cal.4th 807 [98 Cal.Rptr.2d 221, 3 P.3d 868] (*Connecticut Indemnity*). In that case, a city council was investigating toxic contamination of the water supply for the purpose of obtaining information regarding insurance coverage and responsibility for the contamination. The court explained: "The legislative subpoena power is broad. [Citation.] As the United States Supreme Court observed . . . the legislative 'power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function.' [Citations.]" (*Id.* at p. 813.) The court concluded: "[C]ontrolling authority establishes that a city may issue legislative subpoenas when it has been authorized by ordinance or similar enactment to do so, when issuance of the subpoenas serves a valid legislative purpose, and when the witnesses or material subpoenaed are pertinent to the subject matter of a legislative investigation." (*Id.* at p. 810.)

Pitamber argues that *Connecticut Indemnity* does not expressly authorize a city council to use its subpoena power to "enforce ordinary administrative matters that are not pending before it." But *Connecticut Indemnity* concerned a city council's investigation of a matter within its legitimate functions as a legislative body. No formal proceeding was pending in *Connecticut Indemnity*, but the Supreme Court approved the use of the administrative subpoena to assist the city in its investigation.[9] (*Connecticut Indemnity, supra,* 23 Cal.4th at p. 810.)

 In this case, the City Council was considering the valid legislative concern of carrying out the audit of an uncooperative taxpayer to determine compliance with the City's taxing ordinance. Matters relating to the investigation and enforcement of tax measures are proper legislative concerns. The Vacaville City Council, like the council in *Connecticut Indemnity*, met to consider the tax administrator's effort to obtain Pitamber's cooperation with the tax audit. The City Council authorized the mayor to issue the subpoena and to apply to the superior court for enforcement of the subpoena as authorized by section 37104. These facts demonstrate that the tax audit and Pitamber's refusal to comply with the subpoena were the subject of a legislative matter pending before the City Council.

 "There is no constitutional objection to a system under which the heads of departments of government may compel the production of evidence

---

legislative bodies to conduct appropriate investigations, "has already been held to carry with it the power in proper cases to require and compel the attendance of witnesses and the production of books and papers by means of legal process . . . ."].)

[9] Contrary to Pitamber's argument, the fact that the initial appeal of a decision of the City's tax administrator is heard by the City manager does not divest the City Council of its subpoena power.

for purposes of investigation, without instituting formal proceedings against the one from whom the evidence is sought or filing any charges against him." (*Brovelli v. Superior Court* (1961) 56 Cal.2d 524, 529 [15 Cal.Rptr. 630, 364 P.2d 462]; see also *People ex rel. Franchise Tax Bd. v. Superior Court* (1985) 164 Cal.App.3d 526, 538 [210 Cal.Rptr. 695], [upholding subpoena duces tecum issued by Franchise Tax Board in connection with investigation of compliance with tax laws].) The City properly issued the subpoena.

## CONCLUSION

The order appealed from is affirmed.

Swager, J., and Margulies, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 2, 2005. George, C. J., did not participate therein.