Filed 11/26/14  Patel v. City of Los Angeles CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| KHAPABHAI PATEL et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF LOS ANGELES et al.,<br><br>Defendants and Respondents. | B248240<br><br>(Los Angeles County<br>Super. Ct. No. BS135645) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Robert H. O'Brien, Judge.  Affirmed.

Frank A. Weiser for Plaintiffs and Appellants.

Michael N. Feuer, City Attorney, Gregory P. Orland, Brian I. Cheng, and Lisa Berger, Deputy City Attorneys for Defendants and Respondents.

Khapabhai Patel and Pramilaben Patel (appellants), co-owners of the Alvarado Palms Motel (the property), appeal from a judgment entered by the trial court denying their petition for writ of mandate and dismissing the entire action with prejudice. Through the writ, appellants challenged respondent Los Angeles Housing Department's (LAHD) determination that the property is a residential hotel under the Residential Hotel Unit Conversion and Demolition Ordinance (RHO) (L.A. Mun. Code, § 47.70 et seq.).[1] Appellants also asserted a cause of action for inverse condemnation. We find no error in the trial court's decision denying the writ and dismissing the entire action with prejudice. Therefore, we affirm the judgment.

## CONTENTIONS

Appellants contend that: (1) the RHO is unconstitutionally vague; (2) there was no substantial evidence to support the determination that the property is a residential hotel; and (3) the trial court erred in dismissing the entire action, including the cause of action for inverse condemnation.

## THE RHO

The RHO was enacted in 2008 "to benefit the general public by minimizing the adverse impact on the housing supply and on displaced low-income, elderly, and disabled persons, which results from the loss of residential hotel units through conversion and demolition." (§ 47.71.) The RHO established guidelines for "establishing the status of residential hotel units, . . . regulating the demolition and conversion of these units to other uses, and . . . establishing appropriate administrative and judicial remedies." (§ 47.71.)

Pursuant to the RHO, a residential hotel is defined as:

> " . . . any building containing six or more guest rooms or efficiency units, intended or designed to be used, or which are used, rented, or hired out, to be occupied, or which are occupied, for sleeping purposes by guests, and which is also the primary residence of those guests. The term Residential Hotel excludes any building containing six or more guest rooms or efficiency units, which is primarily used by transient guests who do not occupy units in that building as their primary residence." (§ 47.73(S).)

---

[1] All further section references are to the Los Angeles Municipal Code unless otherwise indicated.

2

A residential unit is defined as:

". . . any guest room, light housekeeping room, efficiency unit, or dwelling unit in a Residential Hotel that was occupied as a primary residence on October 11, 2005. If a unit was vacant on October 11, 2005, a Residential Unit shall mean any guest room, light housekeeping room, efficiency unit, or dwelling unit in a Residential Hotel that, on the first day that the unit was subsequently occupied, was occupied as a primary residence." (§ 47.73(T).)

A tenant is defined as "a Person who is entitled to occupy and occupies a Residential Unit for at least 31 consecutive days." (§ 47.73(U).)

The LAHD is charged with determining whether a given building should be designated a residential hotel. (§ 47.75(A).) Hotel owners are permitted to appeal to the LAHD after a determination that their property is a residential hotel. (§ 47.75(B).) The owner has the burden of proving by a preponderance of the evidence that the property is not a residential hotel. (§ 47.75(C)(3).) Certain exemptions are available under section 47.74, and hotel owners are permitted to file claims of exemption (§ 47.77).

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2008, the LAHD notified appellants that it had determined that the property should be categorized as a residential hotel. Appellants filed a timely appeal pursuant to section 47.75(C). On February 24, 2009, LAHD affirmed its original determination that the property is a residential hotel.

Appellants filed a timely appeal of the February 2009 decision to the LAHD General Manager's Hearing Officer. Appellants contended that the property is used mainly as a transient occupancy hotel and that the use of the property does not conform to the defined use of a residential hotel subject to the provisions of the ordinance. Appellants also claimed violations of the federal and state takings clauses, the due process clauses and the equal protection clauses of the federal and state constitutions. The General Manager found, based on a preponderance of the evidence, that the property was properly deemed a residential hotel pursuant to the relevant laws.

3

Appellants initiated federal litigation in August 2009. They included in their federal complaint a state claim for a petition for writ of mandate under Code of Civil Procedure section 1094.5 and a state claim for inverse condemnation. In February 2011, the district court decided to abstain from exercising jurisdiction under *Railroad Com. of Texas v. Pullman Co.* (1941) 312 U.S. 496. It stayed appellants' federal constitutional causes of action and dismissed appellants' state causes of action. The Ninth Circuit affirmed the district court's decision on October 13, 2011.

Appellants initiated this state court proceeding on January 23, 2012, claiming a cause of action for writ of mandate under Code of Civil Procedure section 1094.5 and a cause of action alleging an inverse condemnation taking. Appellants argued that the RHO was unconstitutionally vague. They alleged:

> "The ordinance does no[t] define the term 'primary residence' and the ordinance is vague, circular and highly confusing as to the use and application of this certain term in the ordinance and the definitional terms 'Residential Hotel,' 'Residential Unit,' 'Tenant,' and 'Tourist Unit' contained at LAMC Sections 47.73S-[47].73V."

Appellants argued there was no substantial evidence to support the decision and the determination that the property is a residential hotel subject to the RHO is a taking compensable under article I, section 19 of the California Constitution.

A hearing on the petition was held on February 22, 2013.

On March 11, 2013, the superior court issued its judgment denying the petition and dismissing the action with prejudice.

On April 19, 2013, appellants filed their notice of appeal.

## DISCUSSION

### I. Standard of review

"In reviewing a decision of the [agency], the superior court exercises its independent judgment on the evidentiary record of the administrative proceedings and inquires whether the findings of the administrative agency are supported by the weight of the evidence. [Citations.]" (*Lozano v. Unemployment Ins. Appeals Bd.* (1982) 130

4

Cal.App.3d 749, 754 (*Lozano*), citing Code Civ. Proc., § 1094.5, subds. (b), (c).) In reviewing the trial court's ruling on a writ of mandate, the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial, credible and competent evidence. (*Lozano*, at p. 754.)

However, where the probative facts are not in dispute, the determination of the trial court may be reviewed as a matter of law. (*Sanchez v. Unemployment Ins. Appeals Bd.* (1984) 36 Cal.3d 575, 585.) Constitutional issues are reviewed de novo. (*People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 632.)

## II. Constitutionality of the RHO

### A. *Applicable legal standards*

There is a "'strong presumption that legislative enactments "must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. [Citations.] . . .'" [Citation.]" (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 568.) A statute will not be "''"held void for uncertainty if any reasonable and practical construction can be given to its language"' [Citation.]" (*Ibid.*) "Some imprecision in statutory language is allowable and a statute is not unconstitutionally vague if there is some matter of degree in the definition of a statutory term or the words used do not have a universally recognized meaning. Instead, a statute will be deemed sufficiently precise if its meaning can be fairly ascertained by references to similar statutes or other judicial determinations, or to the common law or the dictionary, or if the words have a common and generally accepted meaning. [Citation.]" (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 435.)

### B. *A reasonable and practical construction can be given to the RHO language*

Appellants' first argument is that the RHO violates the due process clauses of the United States and California Constitutions. Specifically, appellants argue that the ordinance does not adequately define the terms "residential unit" and "primary residence." Because of this inadequacy, appellants argue, there are insufficient guidelines as to how the LAHD determines whether a building is a residential hotel under section 47.75(A).

The meaning of the term "residential unit," as used in the RHO, is reasonably clear. As set forth above, the term is specifically defined in section 47.73(T). The term is used to refer to any guest room, light housekeeping room, efficiency unit, or dwelling unit that was occupied as a primary residence on October 11, 2005. The term "residential" has a generally accepted meaning which is commonly understood. Merriam-Webster gives a practical definition: "used as a residence or by residents." (Merriam-Webster Online Dict. (2014) <http://www.merriam-webster.com/dictionary/residential>). The term is universally understood to relate to a place where people live.

The term "unit" is also commonly used and understood. A unit is generally defined as "a single thing . . . that is a part of something larger." (Merriam-Webster Online Dict., *supra*, <http://www.merriam-webster.com/dictionary/unit>). The two common words, taken together, clearly refer to a single subdivision of a larger residential housing area. Because the term "residential unit" has been specifically defined in the ordinance, and because the term is also easily defined under common usage, we decline to find it unconstitutionally vague.

Appellants argue that the definition of "residential unit" introduces a new, undefined term, "dwelling unit," not found in the definition section. However, like the terms described above, we find the term "dwelling unit" sufficiently simple to understand given the commonly accepted uses of the words in the phrase. A dwelling is "a shelter (as a house) in which people live." (Merriam-Webster Online Dict., *supra*, <http://www.merriam-webster.com/dictionary/dwelling>.) Paired with the term "unit," discussed above, we conclude that most readers would understand this phrase to mean a portion of a larger shelter where humans reside. Again, we see no unconstitutional vagueness in the use of the term.

Appellants also take issue with the use of the terms "tenant" and "primary residence." The term "tenant" is defined in section 47.73(U) as "a Person who is entitled to occupy and occupies a Residential Unit for at least 31 consecutive days." Appellants complain that the term "tenant," while defined in the ordinance, appears nowhere in the

6

definitions of the terms "residential hotel" or "residential unit." Instead, the term "primary residence" is used in those definitions. The term "primary residence," however, is not defined in the ordinance. Under the circumstances, appellants argue, building owners are unable to understand how their buildings will be classified as residential hotels.

The ordinance certainly would have been more clear if the drafters had used the term "tenant" rather than the term "primary residence" in sections 47.73(S) and (T).[2] Use of the term "tenant" in the definitions of "residential hotel" and "residential unit" would have made it very clear that the criteria for determining whether a unit is a residential unit is whether the guest occupies the unit for 31 consecutive days.

However, despite the absence of the word "tenant" from the definitions of "residential unit" and "residential hotel," we find that the ordinance as a whole is not unconstitutionally vague.

A tenant, defined as a person who rents or leases a residential unit for at least 31 consecutive days, is different from a transient or a tourist. The common use of the term "tenant" is an individual who rents or leases from a landlord and possesses real property pursuant to agreement. The word "tenant" is frequently used to describe a person who is renting an apartment where he or she resides. (Merriam-Webster Online Dict., *supra*, http://www.merriam-webster.com/dictionary/tenant>.) Thus, the building owner can reasonably conclude that a tenant, who stays at a hotel for at least 31 days, is considered to be using the unit as his or her primary residence.

Reading the basic terms of the ordinance together, the ordinance thus may be reasonably interpreted as follows: a residential hotel is any building containing six or more residential units. A residential unit is a guest room in a hotel that was occupied as a primary residence on October 11, 2005. From both the definition and the common usage

---

[2] For example, the drafters could have written "A Residential Unit is any guest room . . . that was occupied *by a tenant* on October 11, 2005," rather than "A Residential Unit is any guest room . . . that was occupied as a primary residence on October 11, 2005."

of the term "tenant," the reader can reasonably understand that a primary residence is a unit occupied by a tenant -- i.e., someone who occupies the unit for at least 31 consecutive days.

While it is not a model of clarity, a reasonable construction can be given to the language of the RHO, and we decline to find the ordinance unconstitutionally vague.

### C. City of San Bernardino Hotel/Motel Assn. v. City of San Bernardino (1997) 59 Cal.App.4th 237 (San Bernardino), is distinguishable

In *San Bernardino*, cited by appellants, a hotel and motel association brought an action challenging the validity of a transient occupancy tax adopted by the city. A violation of any of the ordinance's provisions was a criminal misdemeanor. One of the association's arguments was that the ordinance violated due process of law because the definitional sections of the ordinance were "vague, circular, and contradictory." (*San Bernardino, supra*, 59 Cal.App.4th at p. 245.) In particular, the association objected that the statute used a 30-day occupancy rule to define "hotel," while using a 90-day rule to define "transient."[3] In addition, the association contested the use of the word "dwelling" in defining the term "occupancy," contending that this was contradictory to renting on a transient basis. (*Id.* at p. 247.) The Court of Appeal agreed with the association's arguments, finding that "the definitional problems in the statute render it vague and therefore unconstitutional under the Fifth Amendment. The problems are accentuated by the fact that this is a penal statute. In our view, the definitions do not adequately distinguish between a person living from day-to-day or week-to-week in a motel and an apartment dweller on month-to-month tenancy." (*Id.* at p. 250.)

---

[3]     The *San Bernardino* ordinance defined "hotel" as a structure occupied by transients "for a period of thirty days or less" (*id.* at p. 246), but defined a "transient" as any person who occupies premises intended for transient occupancy for a period of less than 90 consecutive calendar days (*id.* at p. 247). In addition, the definition of "transient" also included individuals who stayed in a hotel for more than 90 days without contracting for occupancy on a permanent basis. (*Id.* at p. 249.)

In contrast to the ordinance at issue in *San Bernardino*, the RHO is not a penal statute. Further, it does not provide directly contradictory information, as the *San Bernardino* ordinance did. Because the meaning of the statute can reasonably be ascertained, we decline to find it unconstitutionally vague.

### III. Substantial evidence supports the administrative decision

Appellants point out that the LAHD evidence submitted showed that more than six units at the property were rented on a transient basis on October 11, 2005, taking into account the vacant units that were subsequently rented for less than 30 days.[4] Appellants argue that the property should thus be exempted under the language of section 47.73(S) which states that "[t]he term Residential Hotel excludes any building containing six or more guest rooms or efficiency units, which is primarily used by transient guests who do not occupy units in that building as their primary residence."

While it is true that more than six units were being used, or were subsequently used, as transient units on October 11, 2005, this evidence does not dictate a finding that the property was primarily used by transient guests. The word "primarily" means "for the most part: chiefly." (Merriam-Webster Online Dict., *supra*, <http://www.merriam-webster.com/dictionary/primarily>.) During the relevant time frame for LAHD's evaluation, more units were being used as residential units than as transient units. Thus, the property was primarily being used by residents who occupied units as their primary residence, resulting in a determination that the property should be classified as a residential hotel.

The ordinance contains no language suggesting that, if a property has six or more units occupied by transient guests, the property should not be classified as a residential

---

[4] The evidence showed that on October 11, 2005, 10 units in the property were occupied by guests who had already rented or would rent the unit for more than 31 consecutive days. Two units were vacant and next occupied by a guest who would rent the unit for 31 consecutive days. Two units were occupied by guests who would rent the unit for less than 30 days; and nine units were vacant and were next occupied by a guest who would rent the unit for less than 30 days.

Thus, under the definition set forth in section 47.73(T), 12 units at the property were residential units; 11 were transient units.

hotel.  Appellants argue that because six residential units makes a residential hotel, six transient units should point to the opposite outcome.  Appellants are reading into the statute language that does not exist.  There is no language in the statute allowing us to assume that the drafters of the ordinance intended the outcome that appellants desire.

Appellants also argue that all the guests staying at the property listed an address other than the motel as their primary residence.  Thus, appellants argue, there is no evidence that any guest staying at the hotel on October 11, 2005, intended to use the property as his or her primary residence.

As set forth above, we find that the ordinance can be reasonably interpreted to mean that a tenant -- i.e., an individual who stays at the hotel for more than 31 days -- is using the unit as his or her primary residence.  The ordinance does not suggest that the tenant's intent, or the existence of an alternative address, has any bearing on the determination as to whether the hotel is the tenant's primary residence.  Therefore evidence on these subjects is irrelevant.[5]

The evidence showed that under the definitions set forth in section 47.73, more than six units were used as the guests' primary residence.  Thus, the evidence supported the administrative decision that the building met the definition of a residential hotel.

## IV.  Dismissal of the inverse condemnation cause of action

Appellants' final contention is that the trial court erred in dismissing the entire action, including their inverse condemnation cause of action.  Appellants argue that the

---

[5]      Appellants point to Government Code section 244, subdivision (f) as requiring a "union of act and intent" before an individual can change his or her residence.  Section 244, subdivision (b) also specifies that "[t]here can only be one residence."  Reading this part of the Government Code as a whole, it is apparent that these Government Code sections are meant to define the group of people who are citizens of the State of California.  Appellants have not presented any compelling argument that the laws defining a resident of the state should be applied to determine the primary residence of an individual under the RHO.  Therefore we reject this argument.

For the same reason, we reject appellants' complaint that the RHO is unclear as to whether the landlord-tenant law, specifically Civil Code section 1940, is relevant in determining residential hotel status.  The RHO makes no reference to this provision of the Civil Code, therefore we find it is inapplicable in determining residential hotel status.

10

trial court heard and ruled upon their writ petition but did not hear or rule upon their inverse condemnation cause of action. Appellants cite *Zinermon v. Burch* (1990) 494 U.S. 113, 127 for the proposition that "the [Supreme] Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property. [Citations.]"

Appellants were provided with a hearing on their writ petition, which took place on February 22, 2013. The cause of action for inverse condemnation was contained within the same pleading as their cause of action for writ of administrative mandamus. Appellants have not suggested that they were prevented from being heard on their inverse condemnation cause of action at the February 22, 2013 hearing. Nor did they provide any substantive argument on the inverse condemnation claim in their brief in support of the petition for writ of mandate.

The trial court was not required to raise the issue of inverse condemnation; instead, it was up to appellants to prosecute their claims. (*People v. Williams* (1999) 20 Cal.4th 119, 128 [party has the obligation to bring an issue to the attention of the trial court]; *Kashmiri v. Regents of the University of California* (2007) 156 Cal.App.4th 809, 830 (*Kashmiri*) ["'each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack'"].) In addition, appellants point to no place in the record where they objected to the trial court's failure to address their inverse condemnation cause of action.

The cases cited by appellants in support of their due process claim are distinguishable. In *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306 (*Mullane*), the Supreme Court addressed the constitutional sufficiency of notice to beneficiaries on judicial settlement of accounts by the trustees of a common trust fund. (*Id.* at p. 307.) The only notice provided was a publication in a local newspaper. (*Id.* at p. 309.) Under those circumstances, the high court held that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present objections. [Citations.]" (*Id.* at p. 314.) Similarly, in *Peralta v. Heights Medical Center, Inc.* (1988) 485 U.S. 80 (*Peralta*),

11

the Supreme Court addressed a situation where a default judgment was entered against an individual defendant who had never been personally served with original service of process. In answer to the argument that the individual had shown no meritorious defense, the high court stated: "Where a person has been deprived of property in a manner contrary to the most basic tents of due process, 'it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits.' [Citation.]" (*Id.* at pp. 86-87.)

Here, in contrast to *Mullane* and *Peralta*, there is no issue regarding the sufficiency of notice provided for the hearing. As set forth above, it was appellants' burden to raise the inverse condemnation issue at the hearing and object to the trial court's failure to address it.

Because appellants failed to raise the issue of inverse condemnation in their trial brief or at the hearing, and because they did not object to the trial court's failure to address the issue, we find that they have forfeited this claim. (*Kashmiri, supra*, 156 Cal.App.4th at p. 830 ["""we ignore arguments, authority, and facts not presented and litigated in the trial court"""].)

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
HOFFSTADT

12