[No. H030689. Sixth Dist. Sept. 18, 2007.]

CITY OF SANTA CRUZ, Plaintiff and Respondent, v.
PRAFUL C. PATEL, Defendant and Appellant.
[And eight other cases.†]

†*City of Santa Cruz v. Patel* (No. H030690, Super. Ct. No. CV154424); *City of Santa Cruz v. Shaikh* (No. H030691, Super. Ct. No. CV154425); *City of Santa Cruz v. Patel* (No. H030692, Super. Ct. No. CV154426); *City of Santa Cruz v. Patel* (No. H030693, Super. Ct. No. CV154427); *City of Santa Cruz v. Patel* (No. H030694, Super. Ct. No. CV154428); *City of Santa Cruz v. Panwala* (No. H030695, Super. Ct. No. CV154429); *City of Santa Cruz v. Patel* (No. H030696, Super. Ct. No. CV154430); and *City of Santa Cruz v. Sood* (No. H030697, Super. Ct. No. CV154431).

236

**COUNSEL**

Frank A. Weiser for Defendants and Appellants.

Atchison, Barisone, Condotti & Kovacevich, John G. Barisone and Heather J. Lenhardt for Plaintiff and Respondent.

OPINION

**PREMO, J.—**

### I. INTRODUCTION

Appellants are the operators of nine hotels in the City of Santa Cruz (City). Appellants challenge the superior court's orders directing them to comply with subpoenas issued by City pursuant to Government Code section 37104 et seq., requiring the production of records necessary for a tax compliance audit. The tax in question is City's transient occupancy tax, a 10 percent tax upon stays of 30 days or less at hotels, motels, and like accommodations within the City. (Santa Cruz Mun. Code, § 3.28.010 et seq. (SCMC).) Appellants contend that they should not be required to produce the records because the ordinance is unconstitutional and because the subpoenas are invalid. We reject the arguments and affirm the orders.

### II. FACTUAL AND PROCEDURAL BACKGROUND

City enacted the Uniform Transient Occupancy Tax Ordinance (Ordinance) in 1984. Pursuant to the Ordinance, the hotel operator collects the tax from the hotel guest and remits the tax to City.[1] On or about February 1, 2006, City's finance director notified hotel operators that City would be conducting an audit to determine the operators' compliance with the Ordinance. Such audits are permitted by SCMC section 3.28.110, which provides that hotel operators must keep records pertaining to the tax for a period of three years and that the director of finance "shall have the right to inspect such records at all reasonable times."

Appellants refused to permit the audit. City, therefore, issued legislative subpoenas pursuant to Government Code section 37104, directing appellants, as the custodians of records of their respective hotels, to produce specified documents pertaining to collection of the tax. Appellants still refused to comply. City then asked the superior court to issue an attachment or, in the alternative, for orders directing appellants to show cause why they should not comply with the subpoenas. The trial court issued orders to show cause and appellants responded by arguing that the Ordinance was unconstitutionally vague and a violation of equal protection. Appellants also argued that the subpoenas were unlawful because they were not issued based upon probable cause to believe a crime had been committed and that they did not fall within any exceptions to that requirement. The trial court rejected the arguments and

---

[1] Our use of the word "hotel" throughout this opinion incorporates the definition of that word contained in the Ordinance quoted below.

ordered appellants to comply with the subpoenas. These appeals followed. Since the issues in each appeal are identical, we have ordered the appeals considered together for purposes of briefing, oral argument, and decision.[2]

### III. Appealability

#### A. Introduction

Before proceeding to the substance of the dispute we must decide whether the superior court's orders are appealable. We conclude that they are.

■ Government Code section 37104 authorizes the legislative body of a city to issue subpoenas "requiring attendance of witnesses or production of books or other documents for evidence or testimony in any action or proceeding pending before it." In the event a witness refuses to comply with the subpoena, the mayor may report that fact to the judge of the superior court. (Gov. Code, § 37106.) "The judge shall issue an attachment directed to the sheriff of the county where the witness was required to appear, commanding him to attach the person, and forthwith bring him before the judge." (*Id.*, § 37107.) "On return of the attachment and production of the witness, the judge has jurisdiction." (*Id.*, § 37108.) Refusal to comply with a subpoena could subject the witness to contempt proceedings. In that event, the witness has the same rights he or she would have in a civil trial "to purge himself [or herself] of the contempt." (*Id.*, § 37109.)

City issued the subpoenas and obtained enforcement orders according to the foregoing statutory scheme. Appellants claim that the compliance orders are appealable. City does not dispute that claim. There is no case directly holding that these compliance orders are appealable. Because there is a split of authority on the point as it relates to orders compelling compliance with administrative subpoenas (Gov. Code, § 11180 et seq.), we consider the issue in some detail.

#### B. Analysis

■ There is no constitutional right to an appeal; the right to appeal is wholly statutory. (*Trede v. Superior Court* (1943) 21 Cal.2d 630, 634 [134 P.2d 745].) Code of Civil Procedure section 904.1 lists the types of rulings that are

---

[2] There are nine cases under consideration. They are: *City of Santa Cruz v. Patel* (No. H030689); *City of Santa Cruz v. Patel* (No. H030690); *City of Santa Cruz v. Shaikh* (No. H030691); *City of Santa Cruz v. Patel* (No. H030692); *City of Santa Cruz v. Patel* (No. H030693); *City of Santa Cruz v. Patel* (No. H030694); *City of Santa Cruz v. Panwala* (No. H030695); *City of Santa Cruz v. Patel* (No. H030696); and *City of Santa Cruz v. Sood* (No. H030697).

appealable in this state. A "judgment," other than an interlocutory judgment, is appealable. (Code Civ. Proc., § 904.1, subd. (a)(1).) Other specified orders are also appealable. An order compelling compliance with subpoenas issued under Government Code section 37104 et seq. is not one of them. Nor are we aware of any case specifically considering the appealability of such orders. *City of Vacaville v. Pitamber* (2004) 124 Cal.App.4th 739, 748 [21 Cal.Rptr.3d 396] (*Vacaville*) was an appeal from such an order, but *Vacaville* did not consider appealability, apparently assuming the order was appealable. The cases differ on the question of whether an analogous order compelling compliance with an administrative subpoena (Gov. Code, § 11180 et seq.) is appealable.

In *Millan v. Restaurant Enterprises Group, Inc.* (1993) 14 Cal.App.4th 477, 484–485 [18 Cal.Rptr.2d 198] (*Millan*), the Fourth District Court of Appeal held that an order compelling compliance with an administrative subpoena issued pursuant to Government Code section 11181 is appealable as a final judgment in a special proceeding. In so holding, *Millan* primarily relied upon the fact that many cases, including cases from the Supreme Court, had considered appeals from such orders without addressing the appealability issue. (*Millan*, at pp. 484–485, citing *Younger v. Jensen* (1980) 26 Cal.3d 397 [161 Cal.Rptr. 905, 605 P.2d 813]; *Board of Medical Quality Assurance v. Gherardini* (1979) 93 Cal.App.3d 669 [156 Cal.Rptr. 55]; *Fielder v. Berkeley Properties Co.* (1972) 23 Cal.App.3d 30 [99 Cal.Rptr. 791]; see also *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 18 [56 Cal.Rptr.2d 706, 923 P.2d 1].) Of course, a case is not authority for an issue it has not considered. (*People v. Toro* (1989) 47 Cal.3d 966, 978, fn. 7 [254 Cal.Rptr. 811, 766 P.2d 577].)

*Millan* also cited as a basis for its holding *Wood v. Superior Court* (1985) 166 Cal.App.3d 1138, 1140 [212 Cal.Rptr. 811]. (*Millan, supra*, 14 Cal.App.4th at p. 485.) *Wood* provides no independent analysis but simply relies upon the observation in *Franchise Tax Board v. Barnhart* (1980) 105 Cal.App.3d 274, 277 [164 Cal.Rptr. 331], that "[a]n order made under the authority of [Government Code] sections 11186–11188 . . . can be viewed as a final judgment in a special proceeding, appealable unless the statute creating the special proceeding prohibits such appeal."

A line of cases from the Second District Court of Appeal holds that compliance orders made under Government Code sections 11186 through 11188 are not appealable. (*Barnes v. Molino* (1980) 103 Cal.App.3d 46, 51 [162 Cal.Rptr. 786] [order is not a final determination of parties' rights and does not fit description of appealable orders listed in Code Civ. Proc., § 904.1]; *People ex rel. Franchise Tax Bd. v. Superior Court* (1985) 164 Cal.App.3d 526, 535 [210 Cal.Rptr. 695] [following *Barnes*]; accord, *Bishop v.*

*Merging Capital, Inc.* (1996) 49 Cal.App.4th 1803, 1808–1809 [57 Cal.Rptr.2d 556] (*Bishop*).) *Bishop* was of the view that, when a witness is ordered to comply with an administrative subpoena issued under Government Code section 11180 et seq., the witness is not aggrieved until he or she has disobeyed the order and been found in contempt. Prior to that, any ruling the appellate court could make would be purely advisory. "That is to say, if we were to rule in favor of the [respondent], we would simply be advising the appellants that, if the [respondent] pursues contempt proceedings, and the trial court finds [appellants] in contempt, we will uphold that ruling on appeal. Similarly, our decision in favor of appellants would amount to no more than our advice to the [respondent] that contempt proceedings will ultimately prove fruitless." (*Bishop, supra,* 49 Cal.App.4th at p. 1808.) The appellate court did not consider the order to be a judgment because, under its analysis, the order was not final.

■ The orders before us compel compliance with legislative subpoenas issued pursuant to Government Code section 37104 et seq. As to these, we believe the better view is that the orders are appealable as final judgments. A judgment is the "final determination of the rights of the parties in an action or proceeding." (Code Civ. Proc., § 577.) The statutory scheme at hand provides for an original proceeding in the superior court, initiated by the mayor's report to the judge, which results in an order directing the respondent to comply with a city's subpoena. Indeed, the compliance order is tantamount to a superior court judgment in mandamus, which, with limited statutory exceptions, is appealable. (*Id.,* § 904.1, subd. (a); *Agricultural Labor Relations Bd. v. Tex-Cal Land Management, Inc.* (1987) 43 Cal.3d 696, 702 [238 Cal.Rptr. 780, 739 P.2d 140].) ■ Whether the matter is properly characterized as an "action" (Code Civ. Proc., § 22) or a "special proceeding" (*id.,* § 23), it is a final determination of the rights of the parties. It is final because it leaves nothing for further determination between the parties except the fact of compliance or noncompliance with its terms. (*Agricultural Labor Relations Bd. v. Tex-Cal Land Management, Inc., supra,* 43 Cal.3d at p. 703.)

The fact that an intransigent witness may be subject to a contempt order does not mean that the order compelling compliance is not final. The normal rule is that "injunctions and final judgments which form the basis for contempt sanctions are appealable. . . . The purpose of any judicial order which commands or prohibits specific conduct is to make the sanction of contempt available for disobedience. As we have noted, this fact does not render such an order 'nonfinal,' and thus nonappealable." (*Agricultural Labor Relations Bd. v. Tex-Cal Land Management, Inc., supra,* 43 Cal.3d at p. 704.) Indeed, the contempt judgment is not appealable. (Code Civ. Proc., § 904.1, subd. (a)(1).) It must be reviewed, if at all, by writ. (*Davidson v. Superior*

*Court* (1999) 70 Cal.App.4th 514, 522 [82 Cal.Rptr.2d 739].) Therefore, review of the underlying order can reliably be had only if that order is appealable.

The superior court's order determined all of the parties' rights and liabilities at issue in the proceedings; the only determination left was the question of future compliance, which is present in every judgment. (*Agricultural Labor Relations Bd. v. Tex-Cal Land Management, Inc.* (1985) 192 Cal.App.3d 1530, 1537 [243 Cal.Rptr. 505].) We conclude that the orders herein must be deemed final judgments and are, therefore, appealable pursuant to Code of Civil Procedure section 904.1, subdivision (a)(1).

## IV. Discussion

### A. *Standard of Review*

Appellants renew the arguments they made below, i.e., that the Ordinance is unconstitutionally vague and a violation of equal protection and that the subpoenas were unlawful. There are no factual issues. The issues are purely legal. Accordingly, we apply the de novo standard of review. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

### B. *Due Process*

#### 1. Introduction

■ Appellants argue that the Ordinance is unconstitutionally vague in violation of the due process clause of the United States Constitution. (U.S. Const., Amends. 5, 14.) An enactment may be declared unconstitutionally vague " 'if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits [or] if it authorizes or even encourages arbitrary and discriminatory enforcement.' (*Hill v. Colorado* (2000) 530 U.S. 703, 732 [147 L.Ed.2d 597, 120 S.Ct. 2480]; *Chicago v. Morales* (1999) 527 U.S. 41, 56 [144 L.Ed.2d 67, 119 S.Ct. 1849]; *People v. Castenada* (2000) 23 Cal.4th 743, 751 [97 Cal.Rptr.2d 906, 3 P.3d 278].) A tax law in particular ' "must prescribe a standard sufficiently definite to be understandable to the average person who desires to comply with it. [Citation.]" ' (*State Bd. of Equalization v. Wirick* (2001) 93 Cal.App.4th 411, 420 [112 Cal.Rptr.2d 919].)" (*Patel v. City of Gilroy* (2002) 97 Cal.App.4th 483, 486 [118 Cal.Rptr.2d 354] (*Gilroy*).)

■ "[An] ordinance is presumed to be valid and must be upheld unless its unconstitutionality ' "clearly, positively and unmistakably appears." ' (*Hale v. Morgan* (1978) 22 Cal.3d 388, 404 [149 Cal.Rptr. 375, 584 P.2d

512]; *Tobe v. City of Santa Ana*[ (1995)] 9 Cal.4th [1069,] 1102 [40 Cal.Rptr.2d 402, 892 P.2d 1145]; *Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 780 [35 Cal.Rptr.2d 814, 884 P.2d 645].) Furthermore, even when criminal penalties apply, a statute or ordinance will be upheld against a vagueness challenge ' " ' " 'if any reasonable and practical construction can be given its language.' . . ." ' " ' (*State Bd. of Equalization v. Wirick, supra*, 93 Cal.App.4th at p. 420; *People v. Townsend* (1998) 62 Cal.App.4th 1390, 1400–1401 [73 Cal.Rptr.2d 438]; *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1117 [60 Cal.Rptr.2d 277, 929 P.2d 596].)" (*Gilroy, supra*, 97 Cal.App.4th at pp. 488–489.)

Appellants argue that this case should be controlled by *City of San Bernardino Hotel/Motel Assn. v. City of San Bernardino* (1997) 59 Cal.App.4th 237 [69 Cal.Rptr.2d 97] (*San Bernardino*) and *Britt v. City of Pomona* (1990) 223 Cal.App.3d 265 [272 Cal.Rptr. 724] (*Pomona*), both of which found a transient occupancy tax to be unconstitutionally vague. The argument is unavailing for the simple reason that the present enactment is different from the enactments in *San Bernardino* and *Pomona*.

## 2. Discussion

The pertinent Ordinance provisions are as follows: "For the privilege of occupancy in any hotel, each transient is subject to and shall pay a tax in an amount of nine and one-half percent of the rent charged by the operator. Effective October 1, 1991 such tax shall be at the rate of ten percent of the rent charged by the operator. The tax constitutes a debt owed by the transient to the city which is extinguished only by payment by the operator to the city. The transient shall pay the tax to the operator of the hotel at the time the rent is paid. If the rent is paid in installments, a proportionate share of the tax shall be paid with each installment. The unpaid tax shall be due upon the transient's ceasing to occupy space in the hotel. If for any reason the tax is not paid to the operator of the hotel, the director of finance may require that such tax shall be paid directly to the director of finance." (SCMC, § 3.28.030.)

"Hotel" is defined as "any structure, or any portion of any structure, which is occupied or intended or designed for occupancy by transients for dwelling, lodging or sleeping purposes, and includes any hotel, inn, tourist home or house, bed-and-breakfast, motel, studio hotel, bachelor hotel, lodging house, rooming house, dormitory, public or private club, mobile home or house trailer at a fixed location, or other similar structure or portion thereof, wherein overnight accommodations are offered for hire, or wherein living accommodations for periods of less than thirty days are customarily offered for hire." (SCMC, § 3.28.020(2).)

"Transient" is defined as "any person who exercises occupancy or is entitled to occupancy by reason of concession, permit, right of access, license or other agreement for a period of thirty consecutive calendar days or less, counting portions of calendar days as full days. Any such person so occupying space in a hotel shall be deemed to be a transient until the period of thirty days has expired. . . . A person is not a transient within the meaning of this chapter if: [¶] (a) Rent has been paid in advance for a period of thirty days or more; and [¶] (b) Neither the occupant, nor the operator may terminate the tenancy in less than thirty days." (SCMC, § 3.28.020(4).)

In *San Bernardino*, the ordinance defined "hotel" as " 'any structure . . . designed for occupancy by transients for lodging or sleeping purposes, and includes any hotel [etc.] for occupancy on a transient basis for a period of thirty days or less.' " (*San Bernardino, supra,* 59 Cal.App.4th at p. 246.) "Transient" was defined as " 'any person who exercises occupancy [etc.] for a period of ninety consecutive calendar days or less . . . and . . . any person who so occupies premises intended for transient occupancy on a temporary basis for more than ninety days without contracting for occupancy on a permanent basis.' " (*Id.* at p. 247.) There were other, even more confusing, provisions, but this small sample amply shows how the *San Bernardino* ordinance was unacceptably vague. The definition of "hotel" used a 30-day limit, while the definition of "transient" used a 90-day limit and at the same time provided that "transient" could also apply to persons who stay in a hotel for more than 90 days if they had not contracted for occupancy on a permanent basis. Further provisions suggested that "a permanent basis" could be any period of time so long as the period was specified in a written agreement. (*Id.* at p. 249.)

The ordinance at issue in *Pomona* defined "transient" as one who occupies a "hotel" and "hotel" as a structure which is occupied or intended to be occupied by "transients." (*Pomona, supra,* 223 Cal.App.3d at p. 279.) This circular definition was complicated by the definitions of "hotel" and "occupancy," which included the word "dwelling." (*Ibid.*) The appellate court noted that "dwelling" implied something more permanent than transient occupancy. Since there was no separate definition for "transient," the ordinance seemed to apply to both transients and persons in longer-term residence. (*Ibid.*)

One of the problems appellants see with City's Ordinance is that it, too, uses the word "dwelling" as well as the word "lodging," both of which imply permanent residency. But these words in the Ordinance do not raise the confusion that concerned the *Pomona* court. As appellants point out, the problem with the *San Bernardino* and *Pomona* ordinances was that what was supposed to be a *transient* occupancy tax appeared to apply even in some genuinely permanent residency situations. Here, the Ordinance defines "hotel" as a structure "wherein overnight accommodations are offered for hire, or

wherein living accommodations for periods of less than thirty days are customarily offered for hire." (SCMC, § 3.28.020(2).) It defines "transient" as any person who occupies a hotel "for a period of thirty consecutive calendar days or less." (*Id.*, § 3.28.020(4).) There is no internal conflict. The tax plainly applies only to temporary occupancy situations.

The language of the Ordinance is very similar to that considered in *Gilroy, supra*, 97 Cal.App.4th 483, which this court held was not unconstitutionally vague. The *Gilroy* ordinance defined "hotel" as " 'any structure . . . occupied or intended or designed for occupancy by transients for dwelling, lodging or sleeping purposes, and includes any hotel, [etc.]' " (*Id.* at p. 487.) "Transient" meant " 'any person who exercises occupancy . . . for a period of thirty (30) consecutive calendar days or less . . . . Any such person so occupying space in a hotel shall be deemed to be a transient until the period of thirty (30) days has expired unless there is an agreement in writing between the operator and the occupant providing for a longer period of occupancy.' " (*Ibid.*)

Appellants seek to distinguish *Gilroy* by arguing that *Gilroy* relied heavily upon the fact that the ordinance allowed a long-term resident to avoid paying the tax for the first 30 days of residency if he or she had a written agreement for a longer occupancy. This is a misreading of *Gilroy*.

The appellant in *Gilroy* made the same arguments appellants make in this case. This court responded: "It is true that the definitions of 'hotel' and 'occupancy' refer to 'dwelling' as well as 'lodging or sleeping' purposes, but the tax applies solely to those who occupy a hotel 'for a period of thirty (30) consecutive calendar days or less.' There is no confusing 90-day period as in *San Bernardino*; the hotel guest is invariably deemed to be a transient until the first 30 days have passed, even if he or she appears to be 'dwelling' in the hotel for that period. That the provision may require tax on a tenant's rent for the first 30 days does not make it impermissibly vague. Furthermore, a written agreement providing for a longer occupancy will remove the rental arrangement from the reach of the ordinance. This exemption provision is not as ambiguous as that of the *San Bernardino* ordinance, which inadequately defined 'permanent' as well as 'agreement in writing' in the context of the convoluted definition of 'transient.' " (*Gilroy, supra*, 97 Cal.App.4th at pp. 490–491, fn. omitted.) As this passage reveals, the inclusion of the written agreement exemption in the *Gilroy* ordinance was not the reason this court found the ordinance was constitutional. Rather, it was constitutional because, measured by common understanding and experience, the language sufficiently specified the taxable circumstances. (*Ibid.*)

■ Appellants also contend that the Ordinance is confusing because it exempts from taxation an occupancy in which the person pays rent in

advance and "[n]either the occupant, nor the operator may terminate the tenancy in less than thirty days." According to appellants, since transience is elsewhere defined as 30 days or less, this provision seems to exempt persons who would otherwise be considered transients since the occupancy may be terminated in 30 days. As this court remarked in *Gilroy*, " 'Many, probably most, statutes are ambiguous in some respects and instances invariably arise under which the application of statutory language may be unclear. So long as a statute does not threaten to infringe on the exercise of First Amendment or other constitutional rights, however, such ambiguities, even if numerous, do not justify the invalidation of a statute on its face.' " (*Gilroy, supra*, 97 Cal.App.4th at p. 491, quoting *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1201 [246 Cal.Rptr. 629, 753 P.2d 585].) Measured by common understanding and experience, the Ordinance clearly describes the circumstances in which it applies. It is not unconstitutionally vague.

## C. Equal Protection

Appellants contend that the transient occupancy tax violates the equal protection clause of the United States Constitution. "Principles of equal protection require 'that persons who are similarly situated receive like treatment under the law and that statutes may single out a class for distinctive treatment only if that classification bears a rational relationship to the purposes of the statute. Thus, if a law provides that one subclass receives different treatment from another class, it is not enough that persons within that subclass be treated the same. Rather, there must be some rationality in the separation of the classes.' (*City of Pomona, supra*, 223 Cal.App.3d at p. 274.)" (*Kumar v. Superior Court* (2007) 149 Cal.App.4th 543, 550–551 [57 Cal.Rptr.3d 72] (*Kumar*).)

In considering whether a tax is consistent with equal protection principles, "courts will look for a rational basis for the class of persons selected to pay the tax. Additionally, the classification must bear a reasonable relation to a legitimate governmental purpose. Arbitrary and capricious classifications are not permitted. [Citation.] The persons who are to *pay* the tax must be a 'reasonably justifiable subclassification' of persons; otherwise, 'the operation of the tax must be such as to place liability therefor equally on all members of the class.' " (*Pomona, supra*, 223 Cal.App.3d at p. 274, quoting *Gowens v. City of Bakersfield* (1960) 179 Cal.App.2d 282, 285–286 [3 Cal.Rptr. 746].)

Under the rational basis test, " '[w]e will not overturn such a [law] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [people's] actions were irrational.' " (*Gregory v. Ashcroft*

(1991) 501 U.S. 452, 471 [115 L.Ed.2d 410, 111 S.Ct. 2395].) This deference is particularly important in the context of complex tax laws. (*City and County of San Francisco v. Flying Dutchman Park, Inc.* (2004) 122 Cal.App.4th 74, 83 [18 Cal.Rptr.3d 532] (*Flying Dutchman*).)

■ Appellants claim that the Ordinance improperly classifies for taxation persons who cannot afford month-to-month housing and can afford residing at a motel only on a day-to-day basis. This is not so. The Ordinance distinguishes between persons who stay in accommodations for only short periods of time and persons who reside in City on a nontransient basis. The rational basis for the classification is City's desire to tax persons for the privilege of enjoying short-term occupancy of accommodations within City's jurisdiction. Transient occupancy is a proper subject of taxation. (See *Gowens v. City of Bakersfield* (1961) 193 Cal.App.2d 79, 84 [13 Cal.Rptr. 820]; *Kumar, supra,* 149 Cal.App.4th at pp. 550–551.)

Appellants argue that the exemption clause in City's ordinance, which excludes from taxation those persons who pay the first 30 days' rent in advance, could result in taxation of some persons who truly intend to be long-term guests but can only afford to pay on a day-to-day or week-to-week basis. According to appellants, there is no rational basis for such a distinction. As City explains, City has a vital interest in ensuring the collection and remittance of the tax, which provides a significant source of revenue for funding the vital services City provides. The exclusion clause advances that interest by limiting the exclusion to legitimate long-term occupants. It may be that some long-term occupants will be ineligible for the exclusion based upon their financial situation at the time, and will have to pay the tax for the first 30 days of their occupancy. If this is unfair, it is not our role to judge. The Ordinance does not "proceed[] along suspect lines" and it infringes no fundamental rights. (*FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307, 313 [124 L.Ed.2d 211, 113 S.Ct. 2096].)

■ Appellants again cite the apparent inconsistency in the ordinance, which defines transience as 30 days or less but excludes from taxation persons who have paid 30 days' rent in advance and may not terminate the occupancy "in less than thirty days." As appellants read it, this means that a person would be exempt even if he or she terminates the occupancy on the thirtieth day, a situation that would otherwise make him or her transient. "[I]t is not the role of a court considering an equal protection challenge to scuttle the law because there may exist circumstances where the purpose of the law could be eluded. '[U]nder the rational relationship standard, a court may not strike down a classification simply because the classification may be imperfect [citation] or because it may be "to some extent both underinclusive and

overinclusive." [Citation.]' (*Warden*[ *v. State Bar* (1999)] 21 Cal.4th [628,] 649, fn. 13 [88 Cal.Rptr.2d 283, 982 P.2d 154].)" (*Flying Dutchman, supra,* 122 Cal.App.4th at p. 84.)

Aside from argument, appellants offer no authority to support their position that the tax violates equal protection principles. In *Kelly v. City of San Diego* (1944) 63 Cal.App.2d 638 [147 P.2d 127], cited by appellants, the court struck down a tax that applied to persons living in house trailers but not to persons living in other types of housing. The court held that the tax was not a property tax but an occupancy tax. As such, persons living in house trailers and persons living in other types of living structures were similarly situated. The court stated: "We can see no valid distinction, for the purpose of classification, between the occupancy of a trailer and the occupancy of a permanent structure except perhaps the greater comfort and convenience of the latter and the higher rent paid." (*Id.* at pp. 643–644.) In *Pomona,* also cited by appellants, the ordinance imposed a tax upon persons who lived in transient-type housing regardless of the length of time they resided there. The appellate court held that there was no rational basis for distinguishing between persons permanently residing in hotels and persons who lived in apartments or houses. (*Pomona, supra,* 223 Cal.App.3d at p. 277.) In contrast to both *Kelly* and *Pomona,* liability for City's transient occupancy tax depends solely upon the duration of occupancy. In sum, appellants' equal protection argument is without merit.

### D. Validity of the Subpoenas

Appellants finally contend that the subpoenas are invalid under the Fourth Amendment because they were issued without probable cause to believe that a deficiency, irregularity, or underreporting exists. City responds that formal compliance with classic Fourth Amendment requirements is not necessary in the case of administrative subpoenas. City is correct.

 The Fourth Amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." " 'The touchstone of the Fourth Amendment is reasonableness. [Citation.] The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable.' " (*People v. Superior Court (Walker)* (2006) 143 Cal.App.4th 1183, 1195–1196 [49 Cal.Rptr.3d 831].)

"As regulatory schemes have become increasingly important in enforcing laws designed to protect the public's health and welfare, reliance on 'probable cause' as a means of restraining agency subpena power has all but disappeared. (See *United States* v. *Morton Salt Co.* (1950) 338 U.S. 632, 641–643 [94 L.Ed. 401, 70 S.Ct. 357]; see also 1 Davis, Administrative Law Treatise (2d ed. 1978) Investigation, § 4.2, pp. 228–232.)" (*Craib v. Bulmash* (1989) 49 Cal.3d 475, 481 [261 Cal.Rptr. 686, 777 P.2d 1120].) *Okla. Press Pub. Co. v. Walling* (1946) 327 U.S. 186 [90 L.Ed. 614, 66 S.Ct. 494] (*Oklahoma Press*) explained the interaction between Fourth Amendment principles and administrative investigations. *Oklahoma Press* was discussed in detail in *Craib v. Bulmash, supra,* 49 Cal.3d 475. Because it is so directly pertinent to the issue at hand, we quote at length from that discussion.

"[*Oklahoma Press*] rejected a Fourth Amendment challenge to judicial orders enforcing administrative subpenas for payroll and sales records. The subpenas were issued by the federal wage and hour administrator to determine whether certain publishing corporations were covered under, and had violated, the Fair Labor Standards Act of 1938 (FLSA). At the outset, the court observed that 'no question of actual search and seizure' is raised where the agency has not sought 'to enter [the subpenaed parties'] premises against their will, to search them, or to seize or examine their books, records or papers without their assent, otherwise than pursuant to orders of court authorized by law and made after adequate opportunity to present objections . . . .' (327 U.S. at p. 195 . . . .) The court further questioned whether the Fourth Amendment applied at all to the subpenas at bar, noting that corporate records historically had been subject to the government's 'broad visitorial power.' (*Id.* at pp. 204, 208 . . . .)

"Accordingly, *Oklahoma Press* articulated a test which applied Fourth Amendment requirements only by analogy. The notion that a subpena could be enforced only where a specific charge or complaint is pending was explicitly rejected. Instead, said the court, the investigation need only be for 'a *lawfully authorized purpose*, within the power of [the legislative body] to command.' (327 U.S. at p. 209 . . . , italics added.) In addition, the requirement of ' "probable cause, supported by oath or affirmation," literally applicable in the case of a warrant,' is satisfied as long as the subpenaed documents are '*relevant*' to the inquiry. (*Ibid.,* italics added.) 'Beyond this the requirement of reasonableness, including particularity in "describing the place to be searched, and the persons or things to be seized," also literally applicable to warrants, comes down to *specification of the documents to be produced adequate, but not excessive,* for the purposes of the relevant inquiry.' (*Ibid.,* italics added.) In a later case, the court emphasized that, while the subpena may be issued and served by the agency, the subpenaed party must have the opportunity for judicial review before suffering any penalties for refusing to comply. (*See* v. *City of Seattle* (1967) 387 U.S. 541, 544–545

[18 L.Ed.2d 943, 87 S.Ct. 1737] [in dictum].) [¶] This test has been routinely applied by the high court to reject various Fourth Amendment challenges to official demands for records." (*Craib v. Bulmash, supra,* 49 Cal.3d at pp. 481–482, fn. omitted.)

More recently, our Supreme Court applied the same principles to test the validity of a legislative subpoena issued pursuant to Government Code section 37104. (*Connecticut Indemnity Co. v. Superior Court* (2000) 23 Cal.4th 807, 810 [98 Cal.Rptr.2d 221, 3 P.3d 868].) The court specified that a legislative subpoena is proper only if "(i) it is authorized by ordinance or similar enactment, (ii) it serves a valid legislative purpose, and (iii) the witnesses or material subpoenaed are pertinent to the subject matter of the investigation." (*Id.* at p. 813.)

Notwithstanding this long-settled law, appellants rely upon *Marshall v. Barlow's, Inc.* (1978) 436 U.S. 307, 312 [56 L.Ed.2d 305, 98 S.Ct. 1816], which upheld a warrant requirement for administrative inspections of commercial property. The case is inapt. As explained by the United States Supreme Court in *Donovan v. Lone Steer, Inc.* (1984) 464 U.S. 408, 414 [78 L.Ed.2d 567, 104 S.Ct. 769], the *Barlow's* line of cases "turned upon the effort of the government inspectors to make nonconsensual entries into areas not open to the public." Where no such entry is made, the enforceability of an administrative subpoena duces tecum is governed, "not by our decision in *Barlow's* as the District Court concluded, but rather by our decision in *Oklahoma Press*." (*Donovan,* at p. 414.)

Applying the foregoing principles to the present cases, we conclude that the subpoenas were proper. The subpoenas were issued in furtherance of City's lawfully authorized concern of carrying out the audit of an uncooperative taxpayer to determine compliance with City's taxing ordinance. (See *Vacaville, supra,* 124 Cal.App.4th at p. 748.) The material sought was pertinent to the tax compliance audit and was set forth in detail in the subpoenas. The subpoenas did not authorize actual entry or immediate inspection, but gave appellants the choice of opening their books at reasonable times or producing them to the director of finance in the future. The opportunity for judicial review is contained in section 37104 et seq. of the Government Code, which sets forth the framework for issuing and challenging a legislative subpoena. Indeed, this case is indistinguishable from *Vacaville, supra,* 124 Cal.App.4th at pages 748 through 749, which held that a city's subpoena for records pertaining to the computation of a transient occupancy tax was proper. In short, the subpoenas were lawful.

## V. Disposition

The order of the superior court in each of the nine cases considered herein is affirmed. Specifically:

The order of the superior court in case No. H030689, requiring appellant Praful C. Patel to comply with the April 13, 2006 subpoena and produce the records requested therein to respondent City of Santa Cruz, is affirmed. The cause is remanded to the superior court to set a date for compliance.

The order of the superior court in case No. H030690, requiring appellant Sanjay Patel to comply with the April 13, 2006 subpoena and produce the records requested therein to respondent City of Santa Cruz, is affirmed. The cause is remanded to the superior court to set a date for compliance.

The order of the superior court in case No. H030691, requiring appellants Roshan Shaikh and Munaf Shaikh to comply with the April 13, 2006 subpoena and produce the records requested therein to respondent City of Santa Cruz, is affirmed. The cause is remanded to the superior court to set a date for compliance.

The order of the superior court in case No. H030692, requiring appellant Kirti Patel to comply with the April 13, 2006 subpoena and produce the records requested therein to respondent City of Santa Cruz, is affirmed. The cause is remanded to the superior court to set a date for compliance.

The order of the superior court in case No. H030693, requiring appellants Kirit Patel and Daxa Patel to comply with the April 13, 2006 subpoena and produce the records requested therein to respondent City of Santa Cruz, is affirmed. The cause is remanded to the superior court to set a date for compliance.

The order of the superior court in case No. H030694, requiring appellants Kirit Patel and Rashmi Patel to comply with the April 13, 2006 subpoena and produce the records requested therein to respondent City of Santa Cruz, is affirmed. The cause is remanded to the superior court to set a date for compliance.

The order of the superior court in case No. H030695, requiring appellants San Panwala and Kusum Panwala to comply with the April 13, 2006 subpoena and produce the records requested therein to respondent City of Santa Cruz, is affirmed. The cause is remanded to the superior court to set a date for compliance.

The order of the superior court in case No. H030696, requiring appellant B.B. Patel to comply with the April 13, 2006 subpoena and produce the records requested therein to respondent City of Santa Cruz, is affirmed. The cause is remanded to the superior court to set a date for compliance.

The order of the superior court in case No. H030697, requiring appellant Tejal Sood to comply with the April 13, 2006 subpoena and produce the records requested therein to respondent City of Santa Cruz, is affirmed. The cause is remanded to the superior court to set a date for compliance.

Rushing, P. J., and Elia, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 3, 2008, S157695. Werdegar, J., did not participate therein.