Filed 2/16/16  Sue v. The Monsoon Blue CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JULIE SU, as Commissioner etc., | B259323 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BS148828) |
| v. | |
| THE MONSOON BLUE, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael M. Johnson, Judge.  Affirmed.

Frank A. Weiser for Defendant and Appellant.

The State of California, Division of Labor Standards Enforcement, Department of Industrial Relations, Deborah D. Graves, for Plaintiff and Respondent.

_____

The Monsoon Blue, Inc., doing business as Udupi Palace, a restaurant in Artesia, appeals from the order entered after the superior court granted the Division of Labor Standards Enforcement (DLSE)'s petition to enforce an administrative subpoena commanding Monsoon Blue to produce employee and payroll-related documents.[1] Monsoon Blue contends the order enforcing the subpoena violates several provisions of the federal Constitution.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The DLSE's Investigation and Subpoena Duces Tecum*

In November 2013 the DLSE initiated an investigation into Monsoon Blue's employment practices after obtaining information indicating it had failed to properly pay employees for all hours worked or to maintain appropriate payroll records as required under the Labor Code and governing administrative regulations.  On May 2, 2014 the DLSE issued a subpoena duces tecum commanding Monsoon Blue to appear on May 6, 2014 at the Office of the Labor Commissioner and produce certain employment and wage-related documents.[2]  After Monsoon Blue failed to appear, California Labor Commissioner Julie Su petitioned the superior court on behalf of the DLSE to compel

---

[1]     An order enforcing an administrative subpoena is appealable.  (See *Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 11 ["'an order compelling compliance with [legislative or administrative] subpoenas is an appealable final judgment'"]; *Macaluso v. Superior Court* (2013) 219 Cal.App.4th 1042, 1049 [same].)

[2]     The subpoena requested nine categories of documents from Monsoon Blue dating from November 2010:  (1) A list of all its employees (defined as any individual "who performs work or provides services on behalf of" Monsoon Blue, including those classified as independent contractors), their last known addresses, occupations and phone numbers; (2) time records reflecting work hours of each of its employees; (3) documents reflecting payments to employees, including bank statements and payroll records; (4) copies of cancelled checks and check stubs for each employee; (5) copies of any itemized pay statements for each employee; (6) workers' compensation policies; (7) copies of IRS Form 1099 provided to any employee since 2010; (8) copies of Employment Development Department, Quarterly Contribution Return and Report of Wages (DE 9) for tax years 2010 through 2013; and (9) copies of IRS Form 1040 for tax years 2010 through 2013.

2

Monsoon Blue's compliance with the administrative subpoena. (See Lab. Code, § 93; Gov. Code, § 11186.) On June 26, 2014 the superior court issued an order to show cause why the administrative subpoena should not be enforced. In the same order the court provided a briefing schedule and set a hearing date for September 29, 2014.

Deputy Labor Commissioner Steve Moreno testified in a declaration supporting the DLSE's petition that he had issued and personally served the subpoena in May 2014 in connection with the DLSE's investigation of Monsoon Blue's wage practices. Moreno explained the subpoena requested documents required to be maintained under governing Industrial Welfare Commission Wage Order No. 5-2001 (see Cal. Code Regs., tit. 8, § 11050) and were necessary to evaluate Monsoon Blue's compliance with labor laws and governing regulations and determine and assess penalties, if any.

Monsoon Blue opposed the petition, arguing that, in seeking its private business records, the administrative subpoena violated its privilege against self-incrimination under the Fifth and Fourteenth Amendments to the United States Constitution. It also argued the subpoena was overbroad and constituted an unreasonable search in violation of the Fourth Amendment.[3]

On September 29, 2014, following the hearing on the order to show cause, the superior court granted the DSLE's petition, ruling Monsoon Blue's constitutional arguments were without merit: The constitutional privilege against self-incrimination, the court explained, is a personal right that does not apply to corporations and may not be invoked by a corporate agent to withhold corporate documents on the ground the agent or the corporation may be incriminated. The court also found the subpoena was properly authorized, sufficiently narrow in scope and did not constitute an unreasonable search in violation of the Fourth Amendment.

---

[3] Monsoon Blue also argued the subpoena violated Code of Civil Procedure section 1985.3 in seeking documents without noticing consumers. It has since abandoned that argument.

**DISCUSSION**

1. *Standard of Review*

The DLSE is charged with enforcing Labor Code provisions and Industrial Welfare Commission orders governing wages, hours and working conditions of California employees. (See Lab. Code, § 71 et seq.; see also Cal. Code Regs. tit. 8, § 11050 [wage order No. 5-2001 governing persons employed in public housekeeping industry, including restaurant industry].) It has broad investigatory powers and duties, including the authority to issue subpoenas compelling the attendance of witnesses and production of documents. (Lab. Code, § 74 [authorizing issuance of administrative subpoena to compel attendance and production of books and records]; see *Craib v. Bulmash* (1989) 49 Cal.3d 475, 478 (*Craib*) [DLSE statutorily empowered to conduct an investigation and subpoena records to determine whether entity under investigation has violated Labor Code provisions and wage and hour regulations it is charged with enforcing].)

On appeal from an order compelling compliance with an administrative subpoena, the superior court's determination on undisputed facts whether the subpoena violates the federal or California Constitution is a question of law subject to de novo review. (*City of San Diego v. Shapiro* (2014) 228 Cal.App.4th 756, 770; *Committee for Responsible School Expansion v. Hermosa Beach City School Dist.* (2006) 142 Cal.App.4th 1178, 1184; *Millan v. Restaurant Enterprises Group, Inc.* (1993) 14 Cal.App.4th 477, 485.)

2. *Monsoon Blue, a Corporation, Does Not Have a Federal Constitutional Privilege Against Self-incrimination*

The United States Supreme Court has held for more than a century the Fifth Amendment privilege against self-incrimination applies to, and may be invoked by, natural persons, not corporations or other organizations. (*Braswell v. United States* (1988) 487 U.S. 99, 102 [108 S.Ct. 2284, 101 L.Ed.2d 98] ["[w]e have long recognized that, for purposes of the Fifth Amendment, corporations and other collective entities are treated differently from individuals"]; *Doe v. United States* (1988) 487 U.S. 201, 206 [108 S.Ct. 2341, 101 L.Ed.2d 184] [corporate bank may not invoke Fifth Amendment in

4

declining to produce documents; "the privilege does not extend to such artificial entities"]; *United States v. White* (1944) 322 U.S. 694, 699 [64 S.Ct. 1248, 88 L.Ed. 1542 (*White*) ["[s]ince the privilege against self-incrimination is a purely personal one, it cannot be utilized by or on behalf of any organization, such as a corporation"]; *Hale v. Henkel* (1906) 201 U.S. 43, 70 [26 S.Ct. 370, 50 L.Ed. 652] [the privilege against self-incrimination "is limited to a person who shall be compelled in any criminal case to be a witness against *himself*; and if he cannot set up the privilege of a third person, he certainly cannot set up the privilege of a corporation"]; see *George Campbell Painting Corp. v. Reid* (1968) 392 U.S. 286, 288-289 [88 S.Ct. 1978, 20 L.Ed.2d 1094]; see also *Brovelli v. Superior Court of Los Angeles County* (1961) 56 Cal.2d 524, 529 ["[n]either the corporation nor a person having custody of its records can refuse to produce them on the basis of the privilege against self-incrimination"].)

"The reason underlying the restriction of this constitutional privilege to natural individuals acting in their own private capacity is clear. The scope and nature of the economic activities of incorporated and unincorporated organizations and their representatives demand that the constitutional power of the federal and state governments to regulate those activities be correspondingly effective. The greater portion of evidence of wrongdoing by an organization or its representatives is usually to be found in the official records and documents of that organization. Were the cloak of the privilege to be thrown around these impersonal records and documents, effective enforcement of many federal and state laws would be impossible. [Citations.] The framers of the constitutional guarantee against compulsory self-disclosure, who were interested primarily in protecting individual civil liberties, cannot be said to have intended the privilege to be available to protect economic or other interests of such organizations so as to nullify appropriate governmental regulations." (*White, supra,* 322 U.S. at p. 700.)

Addressing what it concedes is a seemingly "impregnable line" of authority rejecting application of the Fifth Amendment privilege against self-incrimination to corporations, Monsoon Blue offers an imaginative, but illusory, argument: The Supreme Court cases rejecting a privilege against self-incrimination for corporations and their

5

agents have all done so in the context of federal actions considering the Fifth Amendment itself, not the Fourteenth Amendment's incorporation of Fifth Amendment protections against state encroachment as an element of due process. (See *Malloy v. Hogan* (1964) 378 U.S. 1, 3 [84 S.Ct. 1489, 12 L.Ed.2d 653].) Corporations are considered "persons" protected under the due process and equal protection clauses of the Fourteenth Amendment. (See *Grosjean v. American Press Co.* (1936) 297 U.S. 233, 244 [56 S.Ct. 444, 80 L.Ed. 660] ["a corporation is a 'person' within the meaning of the equal protection and due process of law clauses"]; *Louis K. Liggett Co. v. Lee* (1933) 288 U.S. 517, 536 [53 S.Ct. 481, 77 L.Ed. 929] ["[c]orporations are as much entitled to the equal protection of the laws guaranteed by the Fourteenth Amendment as are natural persons"].) Thus, Monsoon contends, the Fourteenth Amendment protects a broader class of "persons" than the Fifth Amendment. A corporation, therefore, may assert by virtue of the Fourteenth Amendment what it cannot under the Fifth Amendment: a constitutional privilege against self-incrimination.

The Supreme Court has expressly rejected similar arguments that the protections against state action incorporated into the Fourteenth Amendment are broader than the rights set forth in the Bill of Rights itself. (See *McDonald v. City of Chicago* (2010) 561 U.S. 742, 765 [130 S.Ct. 3020, 177 L.Ed.2d 894 [the 14th Amendment's incorporation of certain provisions of the Bill of Rights does not create new rights; rather, it allows for those federal rights to be enforced against state action "'according to the same standards that protect those personal rights against federal encroachment'"]; *Malloy v. Hogan, supra,* 378 U.S. at p. 10 [same].) Neither *Citizens United v. Federal Election Commission* (2010) 558 U.S. 310 [130 S.Ct. 876, 175 L.Ed.2d 753] nor *Burwell v. Hobby Lobby Stores, Inc.* (2014) __U.S. __ [134 S.Ct. 2751, 2771, 189 L.Ed.2d 675], cited generally by Monsoon Blue, alters this analysis. In both cases the Court considered the historic purpose of the First Amendment and recognized corporate personhood for First Amendment protections only. (See *Citizens United,* at p. 342 ["political speech does not lose First Amendment protection 'simply because its source is a corporation'"]; *Burwell,* at pp. 2771-2773 [closely held corporations may invoke protections of Free Exercise

6

clause under First Amendment].)  Neither case overruled the century-old precedent recognizing the privilege against self-incrimination as a uniquely individual right, nor does Monsoon Blue suggest otherwise.  Instead, expanding exponentially on general language from concurring and dissenting opinions in those cases, Monsoon Blue asserts, by the time the Fourteenth Amendment was adopted, corporations had taken on a significant societal presence more worthy of corporate personhood than when the Constitution was ratified.  From this wholly untethered premise, it leaps to the assertion the Fourteenth Amendment was intended to extend broader protection to corporations than the Bill of Rights, including the privilege against self-incrimination.  As discussed, not only is there no authority for such a proposition, but also it directly contravenes the Supreme Court's substantial and long-standing jurisprudence.

For similar reasons we reject Monsoon Blue's corollary argument the failure to recognize a corporate privilege against self-incrimination while recognizing a similar right for individuals violates the Equal Protection Clause.  In limiting the privilege to natural persons, the Supreme Court has consistently, albeit implicitly, found individuals and corporations are not similarly situated for purposes of the privilege against self-incrimination.  (See generally *White, supra,* 322 U.S. 698; *Braswell v. United States, supra,* 487 U.S. at p. 102.)[4]

---

[4]   In *Craib, supra,* 49 Cal.3d at page 490, the California Supreme Court held the constitutional privilege against self-incrimination "does not apply to [an administrative] subpoena for records required to be maintained and produced under [Labor Code] section 1174."  Monsoon Blue contends *Craib* does not control this case because at least some of the documents requested are not required by Labor Code section 1174 and because at least one United States Supreme Court case decided after *Craib* has recognized that compelling the production of nonprivileged documents, coupled with custodial testimony, may in some instances violate the privilege against self-incrimination.  (See generally *United States v. Hubbell* (2000) 530 U.S. 27, 37 [120 S.Ct. 2037, 147 L.Ed.2d 24]; see also *United States v. Doe* (1984) 465 U.S. 605, 612 [104 S.Ct. 1237, 79 L.Ed.2d 552].)  In light of our holding that Monsoon Blue and its agents lack standing to assert a constitutional privilege against self-incrimination on behalf of a corporation, we need not address these issues.

7

3. *The Court's Order Did Not Violate Monsoon Blue's Fourth Amendment Rights*

The Fourth Amendment protects "'[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . .'" (*City of Los Angeles v. Patel* (2015) __ U.S. __ [135 S.Ct. 2443, 2451-2452, 192 L.Ed.2d 435].) Searches conducted without a warrant are per se unreasonable, subject only to a few well-delineated exceptions. (*Ibid.; Arizona v. Gant* (2009) 556 U.S. 332, 338 [129 S.Ct. 1710, 173 L.Ed.2d 485].) One such exception is an administrative search when special needs make the warrant and probable cause requirements impracticable. (*Patel,* at p. 2452; see *Craib, supra*, 49 Cal.3d at pp. 481-482; *City of Santa Cruz v. Patel* (2007) 155 Cal.App.4th 234, 250.)

For an administrative search to be permissible under the Fourth Amendment, the subject of the search must be afforded an opportunity for precompliance review before a neutral decision maker. (*City of Los Angeles v. Patel, supra,* 135 S.Ct. at p. 2452.) In addition, as pertinent here, the subpoena itself must relate to an inquiry the agency is authorized to make, seek only those records that would be available in light of statutory or regulatory record-keeping requirements, and describe the records to be turned over with sufficient particularity so as not to be indefinite or unreasonably burdensome. (*Craib, supra,* 49 Cal.3d at p. 484; C*ity of Santa Cruz v. Patel, supra,* 155 Cal.App.4th at p 251; cf. *De La Cruz v. Quackenbush* (2000) 80 Cal.App.4th 775, 784 [administrative search conducted without benefit of warrant or administrative subpoena violated Fourth Amendment].)

Monsoon Blue contends requests numbers 2 through 6—demanding all documents reflecting time records, work schedules, payroll records, itemized wage statements of employees and workers' compensation policies—lack specificity and are tantamount to a general warrant unsupported by probable cause. The argument is without merit. Like the administrative subpoena seeking wage-related documents in *Craib,* the subpoena in the instant case relates to the scope of the DLSE's authority, demands documents required by law to be maintained (see Cal. Code Reg., tit. 8, § 11050, Lab.

8

Code, § 1174, subd. (c)), and describes the documents sought with particularity. The court did not err in overruling Monsoon Blue's facial challenge to the subpoena.

Monsoon Blue also contends that items 7 through 9—copies of its state and federal tax filings—in the administrative subpoena are "clearly subject to objection on privacy grounds." This bare contention, offered without any supporting argument or citation to authority, is forfeited. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [each point in appellate brief must be supported by argument and, if possible, by citation to authority]; *Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 316, fn. 7 ["'[i]ssues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived'"].)

Finally, citing evidence that Moreno had entered the restaurant several times prior to, and then later in conjunction with, his personal service of the subpoena on Monsoon Blue's agent for service of process,[5] Monsoon Blue contends the DLSE trespassed on its property to gather information for its investigation, conduct it claims amounted to an unlawful search in violation of the Fourth Amendment. (Cf. *Florida v. Jardines* (2013) __ U.S. __ [133 S.Ct. 1409, 1414-1415, 185 L.Ed.2d 495] [probable cause for search warrant obtained by use of drug-sniffing dog on front porch to home was a trespassory invasion of the home's curtilage, constitutionally protected private property, and therefore constituted an unlawful search in violation of the Fourth Amendment]; *United States v. Jones* (2012) __ U.S. __ [132 S.Ct. 945, 949, 181 L.Ed.2d 911] [government's trespass on private property to attach global positioning device to defendant's vehicle to monitor vehicle's movement was a search; although defendant had no reasonable expectation of privacy on public street, the trespass on constitutionally protected private property to gain the information constituted the unlawful search].)

---

5    Jerome Fernandez, the onsite manager at the restaurant, testified in a declaration supporting Monsoon Blue's objections that Moreno had come into the restaurant "several times in the last year" without identifying himself. The declaration does not state Moreno requested documents or did anything other than enter the public area of the premises.

This contention, too, is without merit. At most, Moreno entered the public area of an open restaurant. There is no evidence he entered any private portion of the restaurant, much less acquired any information for purposes of his investigation. (See *Donovan v. Lone Steer, Inc.* (1984) 464 U.S. 408, 413 [104 S.Ct. 769, 78 L.Ed.2d 567 ["[a]n entry into the public lobby of a motel and restaurant for the purpose of serving an administrative subpoena is scarcely the sort of governmental act which is forbidden by the Fourth Amendment"]; *Craib, supra,* 49 Cal.3d at p. 483 [same]; *Patel v. City of Montclair* (9th Cir. 2015) 798 F.3d 895, 898-899 [police officers' entry onto areas of motel open to public did not constitute trespass onto constitutionally protected property; no reasonable expectation of privacy in public area of motel]; cf. *Camara v. Municipal Court of the City and County of San Francisco* (1967) 387 U.S. 523, 528-529 [87 S.Ct. 1727, 18 L.Ed.2d 930] [entry of government inspector into area of a private business being used as a residence constituted an unlawful search].)

## DISPOSITION

The court's September 29, 2014 order granting the Labor Commissioner's petition to compel compliance with the DLSE's subpoena is affirmed. The DLSE is to recover its costs on appeal.


                                        PERLUSS, P. J.
We concur:


        ZELON, J.



        BLUMENFELD, J.*

---

*        Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10